# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CA-01307-SCT

*BANK OF MISSISSIPPI*

*v.*

*SOUTHERN MEMORIAL PARK, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/16/92 |
| TRIAL JUDGE: | HON. JASON H. FLOYD, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DAVID S. RAINES |
| | FRED MANNINO |
| ATTORNEYS FOR APPELLEE: | NICHOLAS VAN WISER |
| | KENNETH C. JOHNSTON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 6/13/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/8/96 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## INTRODUCTION

¶1. The Bank of Mississippi appeals the November 16, 1992, decision of the Harrison County Chancery Court denying the authorization of attorneys' fees incurred while adjudicating its status as trustee in litigation instigated by Southern Memorial Park, Inc. The sole issue on appeal is whether the trial court erred in failing to authorize the payment of attorneys' fees in the aforementioned proceedings.

## STATEMENT OF THE CASE

¶2. Ernest H. Brown, acting as president for Southern Memorial Park, Inc. (hereinafter the "Park") filed on February 1, 1991, a motion seeking to transfer trust funds from First Mississippi National Bank of Hattiesburg to Paul E. Roberts, Jr., C.P.A., in Biloxi. The Harrison County Chancery Court granted the motion, but the Bank of Mississippi (hereinafter the "Bank"), the successor in interest of First National following a merger, refused to comply because of alleged code violations. After communication between the parties, a petition was filed seeking transfer of funds to an entity called Planned Trusts, Inc., which had not yet been validly incorporated.

¶3. The Bank filed an answer to the petition and counterclaimed for the appointment of a new trustee. In its answer, the Bank delineated eleven issues for consideration by the chancery court in which the statutes' interplay with the trust agreement raised issues regarding the proper means of effectuating a legal substitution. In addition, the Bank requested $2,000.00 as compensation for its services as trustee and $3,500.00 in attorneys' fees, but it later increased this amount to $8,339.82 following the performance of additional legal services.

¶4. On October 26, 1992, the chancery court issued its opinion and judgment, recognizing the substitution of Planned Trusts as trustee, mandating the transfer of all funds less the Bank's trustee's fees incurred during final accounting, and assessing all court costs to the Bank. The Bank timely appealed from the judgment.

## STATEMENT OF THE FACTS

¶5. On March 29, 1983, Great American Properties - Mississippi, Inc., a Georgia corporation, executed a perpetual care trust pursuant to the requirements of Miss. Code Ann. § 41-43-31 to -53 (1993) for the management of the Park, which consisted of cemetery property located in Biloxi, Mississippi. The Park is incorporated in the State of Mississippi and engages in the business of "providing lots or other interment space therein for the remains of human bodies, and of entering into contracts with retail consumers whereunder personal property and/or services related to a funeral service or burial of the dead are deliverable at a future or unspecified date." Another declaration of trust was made for the purpose of assuring payment of merchandise purchased and paid for by owners of interment rights in the cemetery.

¶6. Great American created the trusts, with the First Mississippi National Bank in Hattiesburg (hereinafter "First National") designated as trustee. First National merged with the Bank of Mississippi (the "Bank"), which assumed the duties of trustee for the Park. As trustor, Great American subsequently sold the property on May 19, 1983 to Ernest H. Brown, who currently owns the Park in an individual capacity. An amendment was subsequently made to the original trust for a cemetery merchandise trust fund.

¶7. Thereafter, the Park and Brown began efforts to replace the Bank as trustee, executing a perpetual care trust with Paul E. Roberts, C.P.A., as trustee for the Park. On February 22, 1991, the Park filed a motion with the Harrison County Chancery Court, seeking recognition of the trustee transfer. On that very same day, and without notice to the Bank, the chancery court entered an order requiring all trust funds belonging to the Park to be transferred from the Bank to Roberts and designating Roberts as the new trustee.

¶8. Upon advice of counsel, the Bank refused to comply with the order on the basis that various provisions of Miss. Code Ann. § 41-43-31 to -53 and § 75-63-3 to -23 were not followed. The Bank's attorneys presented a letter to the Park on April 4, 1991, suggesting certain procedures to follow in substitution of the trustee, including one procedure which dictated that a corporation, not an individual, had to be designated as trustee. The letter also requested verification of the Notice of Intent to Transfer and Notice of Intent to Receive fund assets, income tax returns, direction as to liquidation of certain fund investments that could not be transferred, and indemnification and hold harmless instruments. Some of these requests were made pursuant to statutory requirements and others were merely precautionary steps taken by the Bank.

¶9. Following this correspondence, the Park did in fact attempt to comply with some of the recommendations made by the Bank's attorney. On July 1, 1991, for example, the Bank received a copy of a notice of intent that Planned Trusts, Inc. was sought as a substitute trustee, even though said entity was not validly incorporated until two weeks later.

¶10. At the time of trial, the principal of the cemetery merchandise trust was $57,835.04 with estimated annual interest of $2,313.00, and the principal of the perpetual care trust was $184,918.69 with estimated annual interest of $7,396.00. In its second and final petition with the chancery court, the Park sought, *inter alia,* a review of the charges and expenses which could be assessed against the trust corpus and those expenses which were incurred by the Bank in its own interest, and therefore, not chargeable against the trust. The Bank, in turn, sought declaration on its duties as trustee in order to appropriately relinquish trustee status, particularly with regards to the state statutory requirements.

¶11. After a final determination by the chancery court authorizing the trustee substitution, the Bank appealed because attorneys' fees were not granted. The law firm of Page, Mannino & Peresich (hereinafter the "Firm"), employed by the Bank, asserts that it spent a total of 82.6 hours at $100.00 per hour in this matter. The Firm further asserts that all the aforementioned fees were incurred after June 28, 1991, the cut-off date established by the chancery court for the trusts' liability of attorneys' fees. As a result, no allowance of attorneys' fees was made for the proceedings related to the substitution of the trustee.

## ANALYSIS OF THE LAW

¶12. Neither trust agreement addressed the reimbursement of attorneys' fees to the trustee. However, various statutes imply that, when related to the administration of the trust, attorneys' fees are reasonable expenses entitling the trustee to reimbursement. First, Miss. Code Ann. § 75-63-7 specifically allows for the income of trust funds to be used for reasonable expenses as stated herein:

> To insure the adequacy of the trust funds of their intended purpose, the net income therefrom shall remain therein and be reinvested and compounded except the income of the trust fund may be used to defer reasonable expenses of the trustee in connection with the administration of the trust funds.

Miss. Code Ann. § 75-63-7 (1991).

¶13. Another code section pertaining to perpetual care trusts requires that the principal remain intact and the funds be used only for cemetery upkeep. Miss. Code Ann. § 41-43-37(1), (5) (1993). These statutes are open to interpretation, and the chancery court decided that the Bank was not entitled to the expense of court costs nor attorneys' fees associated with the trustee substitution after June 28, 1991, when the notice of intent to transfer and the notice of intent to receive funds were received by the clerk's office.

¶14. A reading of the Mississippi Uniform Trustees Powers Law indicates that the Bank should be entitled to a reasonable amount of attorneys' fees for work performed in connection with the trustee substitution. The following are related excerpts:

> (1) From time of creation of the trust until final distribution of the assets of the trust, a trustee has the power to perform, without court authorization, every act which a prudent man would perform for the purposes of the trust, including but not limited to the powers specified in subsection (3) of this section, and those powers, rights and remedies set forth in Section 91-9-9, Mississippi Code of 1972.
>
> \*\*\* \*\*\* \*\*\*
>
> (3) A trustee has the power, subject to subsections (1) and (2):

(r) To borrow money to be repaid from trust assets or otherwise; to advance money for the protection of the trust and for all expenses, losses and liability sustained in the administration of the trust or because of the holding or ownership of any trust assets, for which advances with any interest the trustee has a lien on the trust assets as against the beneficiary.

(x) **To employ persons, including attorneys**, auditors, investment advisors or agents, even if they are associated with the trustee, to advise or assist the trustee in the performance of his administrative duties; to act without independent investigation upon their recommendations; and instead of acting personally, to employ one or more agents to perform any act of administration, whether discretionary or not.

(y) **To prosecute or defend actions, claims or proceedings for the protection of trust assets** and of the trustee in the performance of his duties;

Miss. Code Ann. § 91-9-107 (1), (3) (Revised 1994)(Emphasis added).

¶15. Clearly, this statute provides for attorneys' fees associated with a trustee's administrative duties akin to the Bank's efforts. A trustee has all the powers conferred by statute unless limited by the trust agreement. Miss. Code Ann. § 91-9-105 (1994). The agreements did not specifically limit the Bank's authority to seek legal representation concerning trust matters. As stated in the Joint Stipulation of Facts, Brown and the Park attempted to substitute a trustee without following certain formalities. To retain an attorney to advise them of the proper method of substituting a trustee was not only a natural conclusion for the Bank, but a necessity.

¶16. The trial court's ruling disallowing legal fees after June 28, 1991, does not comport with a fair reading of the applicable statutes. One arguable basis for denying attorneys' fees would be if it were determined that the Bank was no longer a trustee as of June 28, 1991, when Ernest Brown exercised his contractual right to substitute trustees by filing notice of his intention to transfer and receive. As the Bank points out, however, this notice alone does not complete the substitution process, given that a bond is required to be posted, unless the court waives the posting of said bond. Miss. Code Ann. § 41-43-37 and § 75-63-17 (1972). The trial court did not waive the posting of said bond, however, directing the Bank to transfer the amounts in the two trusts to Planned Trusts, Inc., the substitute trustee, only upon receiving a bond in the amount equal to the assets to be transferred from the Bank.

¶17. It was within the responsibility of the Bank as trustee to undertake reasonable steps to see that the interest of the beneficiaries were protected until such point as a valid substitution of trustees had taken place. The actions of the trial court in not waiving the bond requirement validly led the Bank to conclude, under Mississippi law, that it still had the duties of trustee until such bond was provided or requirement thereof was waived. Given that no bond had been filed and that the successor trustee was not even yet a legal entity, the Bank was still the trustee pursuant to Mississippi statutes, and a ruling which held otherwise would be in error as a matter of law.

¶18. In addition to the aforementioned considerations, the Bank had reason to suspect the financial and legal integrity of the substitute trustee, Planned Trusts, Inc. As of June 28, 1991, the date on which the notice to accept the assets of the trust was given by Paul Roberts as president of the putative corporation (as well as the cut-off date set by the trial court for the recovery of legal fees), Planned Trusts, Inc. had still not been validly incorporated. Moreover, Planned Trusts, Inc. is given authority under its Articles of

Incorporation to issue one thousand shares of stock at a par value of $1.00 each, which indicates a rather weak capital structure of said corporation. Had the Bank been asked to transfer the assets of the trust to a legally and financially well-established corporation, it would have had less reason to contest various legal issues on behalf of the beneficiaries.

¶19. The substitution of a trustee can have enormous consequences to the beneficiaries of a trust, and the Bank had reason to proceed diligently in accordance with its fiduciary duties. In addition to the questions surrounding the integrity of Planned Trusts, Inc., the Bank had other cause to proceed cautiously with regard to this particular case. Most notably, in 1991 the Bank had seen the Park make a prior attempt to substitute trustees in an *ex parte* proceeding of which it had been given no notice, in contravention of established procedural requirements.

¶20. When considered in light of this history, as well the failure of the Park to follow the statutory procedures in the second attempted substitution of trustees, the Bank can not be said to have been overly cautious in continuing to obtain advice of counsel with regard to the substitution of trustees. In the opinion of this Court, the Bank performed in this case as a diligent trustee should in requiring the Park to meet the statutory requirements relating to trustee substitutions. This Court would not hesitate to rule against any trustee who negligently allowed the trust to be placed under the control of a financially irresponsible or legally non-existent substitute trustee, and we find that the Bank proceeded with due caution under the particular facts of this case.

¶21. Another arguable basis for denying attorneys' fees after June 28, 1991, would be if it were determined that the Bank was attempting to promote its own interests rather than those of the beneficiaries in incurring the legal expenses. The Bank, however, correctly notes that the statutes with which it was attempting to comply were passed for the benefit of the beneficiaries of trusts. While it may be true that the Bank derived an incidental benefit from performing its legal duties owed under the statutes by avoiding legal liability for breaching said statutes, the statutes were nevertheless written for the benefit of the beneficiaries of the trust.

¶22. Of significant dispute in this appeal is the standard of review to be applied thereto. A chancellor's ruling on findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. *Denson v. George,* 642 So. 2d 909, 913 (Miss. 1994). A trial court's decision on attorneys' fees is subject to the abuse of discretion standard of review. *Barber v. Barber*, 234 Miss. 89, 105 So.2d 630 (1958). However, where questions of law are raised, this Court conducts a *de novo* review. *Denson,* 642 So. 2d at 913 [citations omitted]. It is the opinion of this Court that to deny outright all attorneys' fees incurred after July 28, 1991, was in error as a matter of law, where the Bank was merely following the dictates of the statute in protecting the interests of the beneficiaries of the trust. A decision to deny such attorneys' fees in their entirety goes against the intent of the previously discussed statutes and as such is subject to a *de novo* review.

¶23. The Mississippi Uniform Trustees Powers Law impliedly recognizes the Bank's rights as trustee to have legal representation for administrative duties. Such duties should encompass trustee substitutions. Having said this, this Court makes no ruling as to the amount of attorneys' fees which should be awarded to the Bank in this particular case. In deciding whether to seek legal counsel with regard to matters relating to his duties as a trustee, a trustee must be acutely aware of the detrimental effect the expenses associated with obtaining said counsel can have on the assets of the trust. It would indeed be a pyrrhic victory if a trustee were to ensure that the statutory requirements relating to the trust were followed to the last detail,

only to unduly deplete the assets of the trust in the process.

¶24. Thus, this opinion should not be read as a blanket authorization for attorneys representing trustees to use the statutory provisions relating to trusts as a means of generating legal fees at the expense of the trust assets. Chancellors should carefully scrutinize any requests for attorneys' fees to be paid out of trust income to determine whether said amounts are fair in relation to the amount of work done. The chancellor should also consider the importance of the interest of the beneficiaries which the trustee is seeking to protect, as well as whether the trust would be able to continue to perform its stated functions if the expenses were allowed to be paid out of trust income. In cases involving misuse of trust assets to generate legal fees or to promote some interest of the trustee, it is, of course, within the discretion of the chancellor to deny attorneys' fees in their entirety.

¶25. To the extent that the amount of work performed by said attorneys is excessive in light of the aforementioned considerations, the cost for such work should properly be borne by the trustee rather than the beneficiaries of the trust. A trustee should not allow its counsel to undertake extraordinary legal measures to ensure that the letter of the law is followed with regard to matters of dubious importance, particularly if doing so would unduly deplete the assets of the trust. Although this Court finds, as noted earlier, that the Bank acted responsibly in requiring that the statutory requirements be complied with, we make no finding or recommendation as to the appropriateness of the amount of work performed by the attorneys in this particular case, nor to the appropriateness of the specific amounts charged therefore. It is left to the Chancellor on remand to make a ruling as to the appropriateness thereof, taking into consideration the factors discussed above. A finding by the chancellor as to the amount of such attorneys' fees will, as always, be subject to an abuse of discretion standard of review by this Court. *Barber*, 234 Miss. at 93, 105 So.2d at 630.

¶26. For the foregoing reasons, this case is reversed and remanded for a determination of a reasonable amount of attorneys' fees owed to the Bank, to be paid out of the income of the trust.

¶27. **REVERSED AND REMANDED.**

**SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AN D MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE OPINION JOINED BY LEE, C.J.**

 

 

     **McRAE, JUSTICE, DISSENTING:**

 

¶28. I must respectfully dissent from the decision to remand this case for another determination of attorneys' fees as the Bank failed to demonstrate an abuse of discretion.

> The allowance of attorney's fees is of course largely discretionary with the trial court when the same should be allowed and this Court will not undertake to substitute its judgment for that of the chancellor unless it clearly appears that the chancellor has abused his discretion or has failed to apply correctly the equitable principles which govern in such cases.

*Barber v. Barber*, 234 Miss. 89, 93, 105 So. 2d 630, 632 (1958).

¶29. The chancellor in this case refused to allow for attorneys' fees after June 28, 1991, having concluded the Bank was no longer trustee as of this date since Brown had exercised his contractual right to substitute trustees, and that any actions by the Bank after this date were therefore only precautionary in order to protect its own interests, as opposed to the interests of the trust. The chancellor was correct in concluding that it was improper to allow attorney fees to a party who is no longer trustee. Such a party should not be permitted to incur legal bills at the expense of the trust as it could potentially wipe out the trust.

¶30. There is a presumption in favor of the validity of the trial court's judgment, and this Court will affirm the judgment if it can be upheld for any reason. *Gates v. Gates*, 616 So. 2d 888, 890 (Miss. 1993); *Taylor v. F. & C. Contracting Co.*, 362 So. 2d 625, 628 (Miss. 1978); *Rayner v. Lindsay*, 243 Miss. 824, 138 So. 2d 902 (1962). Because the record supports the denial of attorneys' fees after June 28, 1991, the Bank has failed to demonstrate an abuse of discretion. Therefore, I dissent from the majority's decision to remand this case to the lower court for another determination of attorneys' fees.

**LEE, C.J., JOINS THIS OPINION.**