## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00634-SCT

*CHERYL LADNER*

*v.*

*WOODROW LOGAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/27/2002 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SHEILA HAVARD SMALLWOOD |
| | GLENN LOUIS WHITE |
| ATTORNEYS FOR APPELLEE: | DAVID ALAN PUMFORD |
| | ERIK M. LOWREY |
| | ROBERT R. MARSHALL |
| | RICHARD ANTHONY FILCE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART; ON CROSS-APPEAL: AFFIRMED - 10/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     Cheryl Ladner appeals from a judgment of the Pearl River County Chancery Court which awarded her emancipated son $4,291 in unpaid child support against Ladner's ex-husband, Woodrow Logan. Logan cross-appeals from the chancellor's award of $2,000 in attorneys' fees to Cheryl. We affirm the

chancellor in all respects except that we reverse and remand for entry of a new judgment for a recalculated award to the son based on the correct monthly amount and for an award of post-judgment interest thereon.

## FACTS AND PROCEDURAL HISTORY

¶2.     Cheryl Ladner and Woodrow Logan were divorced by decree of the Pearl River County Chancery Court on September 16, 1983.  Woodrow was ordered to pay $475[1] per month in child support for the couple's four children, namely, David Logan, born on April 17, 1970, Kevin Logan, born on September 20, 1972, Vincent Logan, born on April 10, 1974, and Darren Logan, born on October 25, 1976.  On December 17, 1985, Woodrow was found in contempt of the divorce decree with the court finding a total arrearage of $3,686.  On April 13, 1996, the Mississippi Department of Human Services filed a petition for citation of contempt on behalf of Cheryl seeking $31,596 in arrearages as of February 28, 1995.  The affidavit of accounting submitted with DHS's petition indicated that Woodrow had paid a total of $28,818 and was in arrears $31,596.

¶3.     On August 29, 1994, the chancellor signed a child support enforcement transmittal pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) for enforcement in Jefferson Parish, Louisiana.  Thereafter, on September 11, 1996, Woodrow wrote a letter to the clerk of court of Pearl River County which was filed on September 16 stating that a judgment on his support obligation had been entered in the Jefferson Parish Juvenile Court in Louisiana.  The Louisiana judgment was dated October 31, 1994, and stated in pertinent part:

> BACK $28, 607.00 TO IV-D AS OF 10/31/1994,

---

[1]The chancellor's memorandum opinion and judgment erroneously states that the amount of monthly child support was $450.  The record also intermittently refers to the obligation as $450 per month; however, the original decree stated $475, and no modification was ever entered.

2

TESTIMONY TAKEN OF MS VEDROS, DEFENDANT, & MS LOGAN,[2]
MOTION TO STAY INCOME ASSIGNMENT DENIED.
AGREEMENT REACHED.
WAGE ASSIGNMENT ORDERED IN THE AMOUNT OF $100.00 PER MONTH
ON ARREARS ONLY AS SET THIS DATE AT $13,075.00, EFF. 12/1/94.
THIS IS AN ARREARS ONLY CASE IN THE STATE OF LOUISIANA.

¶4. An income assignment order was also entered on November 29, 1994, ordering Woodrow's employer to withhold $100 per month to satisfy the $13,075 arrearage.

¶5. After numerous continuances, the significance of which is discussed later, the chancery court entered a judgment for citation of contempt signed December 19, 1996, and filed January 24, 1997, finding Woodrow in arrears $39,696 as of January 8, 1997. An order of withholding was entered the same day. In response, Woodrow filed a petition to correct judgment on July 17, 1997, requesting that the chancery court give full faith and credit to the October 31, 1994, Louisiana judgment of $13,075 arrearage. Woodrow also requested that the December 19, 1996, judgment be corrected to reflect an arrearage of $13,075.

¶6. An agreed judgment was signed on May 14, 1998, and filed on May 26, 1998, signed by counsel for Cheryl and former counsel for Woodrow, stating that Woodrow was $39,696 in arrears. With new counsel, Woodrow filed on December 28, 1998, a motion for relief from the May 14, 1998, agreed judgment on the bases that he was not aware of the agreed judgment nor did he authorize his former counsel to execute the judgment.

¶7. The chancery court stayed execution of the previous judgments on March 30, 1999, reserved ruling on Woodrow's M.R.C.P. 62(b) motion, and ordered briefing on the efficacy of the Louisiana judgment and validity of the January 24, 1997, judgment. After briefing, the court found the December 19, 1996,

[2]Cheryl contends that she never attended the Louisiana proceeding.

judgment (which had been entered in response to DHS's April 3, 1996, complaint) and resulting agreed

judgment void for improper notice and lack of opportunity to defend:

> The underlying complaint by DHS leading to that judgment was filed April 3, 1996. Summons was issued for Woodrow on that date, directed to Woodrow at an address in Metairie, Louisiana, and apparently placed in the hand of the Sheriff of Jefferson Parish, Louisiana, and indicates on its Return portion "not found, no such address". An Alias Summons was issued August 22, 1996, returnable to September 19, 1996, for Woodrow at an address in Kenner, Louisiana, and again apparently placed in the hand of the Sheriff of Jefferson Parish, Louisiana, which reflects on its Return portion that personal service was had on Woodrow on September 7, 1996; however, the Return is deficient in that it wholly fails to conform to the required form and detail for service by a Process Server. Thereafter, a copy of that deficient Return was filed on November 22, 1996 purporting to reflect on a Proof Of Service–Summons form the aforesaid personal service had on September 7, 1996; however, this effort is fatally deficient in that it wholly fails to provide the critical information required for the form itself. Nevertheless, and despite the deficiencies noted and lack of legal efficacy of the purported service of process, it is apparent that Woodrow did receive notice of the pending action, for on September 16, 1996 he filed with the Clerk a letter in response to the pending complaint, thereby putting himself in court in the matter, a fact which brings into play the all-important consideration of *due process* as it pertains to the subsequent actions, next addressed.
>
> Those subsequent actions of great significance are as follows: DHS prepared a continuance order which was dated September 16, 1996 but which was filed October 1, 1996, continuing the matter until October 17, 1996. Thereafter DHS prepared another continuance order dated October 17, 1996 but which was filed October 30, 1996 continuing the matter until December 19, 1996. **Though Woodrow had made an appearance in the matter by his filing of a letter and attached documentary evidence, there is a total lack of any showing or contention that he was ever contacted or noticed as to any aspect or further proceedings in this matter, and was totally and effectively deprived of knowledge about, or opportunity to appear at, the December 19, 1996 hearing which produced the purported judgment against him fixing his arrearage at the sum of $39,696 incorporated therein**. Woodrow was clearly denied his constitutional due process rights and opportunity to defend, and the judgment issued is therefore void.

(italics in original & boldface added). An order was entered July 28, 1999, setting aside and cancelling

the December 19, 1996, judgment and May 14, 1998, agreed judgment. The court also afforded Cheryl

30 days to amend her complaint. and Woodrow 30 days to answer.

4

¶8.     Cheryl filed her complaint for citation of contempt and alternatively an amended complaint for contempt of former decree on October 1, 1999, apparently over one month late. The complaint sought, inter alia, $34,820.50 in arrearages plus interest for a total of $73,060.53. Woodrow's answer was filed on November 4, 1999, and asserted the affirmative defense of statute of limitations since the date of the children's emancipation could possibly preclude recovery.

¶9.     Woodrow propounded interrogatories to Cheryl, one of which requested a list of the children, their addresses, and telephone numbers. Cheryl replied to the interrogatory "c/o Cheryl Ladner." Woodrow filed a motion to compel, requesting an order that Cheryl supply the current addresses and telephone numbers of the children so that notices of depositions could be issued. Cheryl then filed a motion to quash the deposition subpoenas, arguing that the children's testimony would be immaterial and irrelevant.

¶10.    Woodrow did not raise the untimeliness of Cheryl's complaint until he filed a motion to dismiss on May 18, 2000, in which he also attempted to raise a defense of failure to state a cause of action. Cheryl correctly responded that Woodrow's failure to assert his timeliness defense in his answer constituted a waiver of the defense.

¶11.    Only Cheryl appeared for her deposition on April 24, 2000, and she indicated the children had no intentions of being deposed. Woodrow responded with a motion for discovery sanctions, but the chancery court held that the children were emancipated upon graduation from high school. The court found that David became emancipated in June 1988, Kevin became emancipated in June 1990, Vincent became emancipated in May 1993, and Darren became emancipated in May 1995.

¶12.    On March 16, 2001, Woodrow moved the court to order Cheryl to amend her complaint to add the four children as parties given that, according to Woodrow, they are necessary parties and the true plaintiffs in the action. The chancery court agreed and ordered Cheryl to join the four children as parties

5

within 40 days. On June 6, 2001, Cheryl submitted four documents captioned "Waiver, Joinder and Assignment" whereby each of the children purported to "transfer, assign, convey and set over to my mother, Cheryl Ladner, all of my interest to any claim or cause of action that I have or may have against my father, Woodrow Logan, for his failure to pay child support. . . ." These assignments were prepared by Cheryl's counsel. Pursuant to these documents, the children joined the action, waived issuance of service, and assigned their rights to their mother.

¶13. Notwithstanding these waivers, the court thereafter ordered that the children be joined as parties and be made available for depositions and other discovery. Darren, who is the youngest child and was 25 years old at the time, was the only child to appear for a deposition at which he stated his older brothers informed him they had no intentions of testifying in the case. The parties also stipulated that Darren's deposition be admitted into evidence.

¶14. The chancellor's memorandum opinion and judgment noted the dates of birth, dates of emancipation, and dates of majority of the four adult children. The total support obligation was found to be $63,000 by applying a monthly rate of $450 from October 1983 to May 1995, the month Darren was emancipated. Actually, the total obligation should be $66,500 because the monthly rate was $475. The judgment noted that Woodrow had already paid a total of $45,837. Thus, the chancellor computed maximum total arrearage at $17,163 and not the $21,138 as asserted by Cheryl in the pre-trial order or $31,596 as asserted by DHS in its complaint or $34,820.50 as asserted by Cheryl in her amended complaint. The chancellor also correctly noted that DHS's complaint and Cheryl's amended complaint purported to be in their own right only, meaning that no averment was made that they were acting on the children's behalf.

6

¶15. The chancellor found that awarding the entire amount of the arrearage to Darren, who incidentally wanted no part in this action, would amount to "an outrageously unjust enrichment." In awarding Darren $4,291, he concluded,

> Because of the peculiar circumstances which permeate this entire action, it is the Court's considered opinion that Darren, under the most generous position afforded him by equitable principles, should not be permitted to recover for himself and *in his own right* more than 25% of the accrued and unpaid arrearage of child support through the month of May 1995, the date of his emancipation and consequent termination of child support due on his account.

(emphasis added). Aggrieved that *she* was not awarded the *entire* amount of the arrearage, Cheryl appeals and raises the following assignments of error:

I. **WHETHER THE CHANCELLOR ERRED IN SETTING ASIDE AND CANCELLING THE $39,696 JUDGMENTS DATED DECEMBER 19, 1996, AND MAY 14, 1998.**

II. **WHETHER THE CHANCELLOR ERRED IN HIS MAY 3, 2001, INTERIM ORDER WHEREIN HE DEEMED THE FOUR ADULT CHILDREN OF THE PARTIES WERE NECESSARY PARTIES TO THE ACTION.**

III. **WHETHER THE CHANCELLOR ERRED IN HIS DETERMINATION OF THE TOTAL AMOUNT OF ARREARAGE.**

IV. **WHETHER THE CHANCELLOR ERRED IN HIS FINDING THAT CHERYL LADNER HAD NO RIGHT OR AUTHORITY TO SEEK DELINQUENT CHILD SUPPORT ON BEHALF OF HER THREE OLDEST CHILDREN SINCE THEY WERE EMANCIPATED AT THE TIME THE PETITION FOR CITATION OF CONTEMPT WAS FILED.**

V. **WHETHER THE CHANCELLOR ERRED IN HIS APPLICATION OF THE STATUTE OF LIMITATIONS AS IT APPLIED TO THE ADULT CHILDREN.**

VI. **WHETHER THE CHANCELLOR ERRED IN FAILING TO RECOGNIZE AND APPLY THE "WAIVER, JOINDER AND ASSIGNMENT" DOCUMENTS SIGNED BY THE CHILDREN.**

7

**VII.** **WHETHER THE CHANCELLOR ERRED IN REDUCING THE AMOUNT OF DELINQUENT CHILD SUPPORT TO 25% OF THE OUTSTANDING ARREARAGE AMOUNT.**

**VIII.** **WHETHER THE CHANCELLOR ERRED IN FAILING TO APPLY INTEREST TO THE AMOUNT OWED.**

¶16. Woodrow cross-appeals and asserts the following assignment of error:

**I.** **WHETHER THE CHANCELLOR ERRED BY AWARDING CHERYL ATTORNEYS' FEES.**

## STANDARD OF REVIEW

¶17. We will not disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Pilgrim Rest Missionary Baptist Church v. Wallace*, 835 So. 2d 67, 71 (Miss. 2003); *Jones v. Howell*, 827 So. 2d 691, 696 (Miss. 2002); *Miller v. Pannell*, 815 So. 2d 1117, 1119 (Miss. 2002). However, questions of law are reviewed de novo. *In re Williamson*, 838 So. 2d 226, 233 (Miss. 2002); *Little v. Miss. Dep't of Human Servs.*, 835 So. 2d 9, 11 (Miss. 2002); *Morgan v. West*, 812 So. 2d 987, 990 (Miss. 2002).

## DISCUSSION

**I.** **WHETHER THE CHANCELLOR ERRED IN SETTING ASIDE AND CANCELLING THE $39,696 JUDGMENTS DATED DECEMBER 19, 1996, AND MAY 14, 1998.**

¶18. Cheryl first argues that the chancellor erred in setting aside and cancelling the December 19, 1996, and May 14, 1998, judgments. Specifically, she argues Woodrow's M.R.C.P. 60(b) motion for relief was untimely, that Woodrow was not due any notice of the continuances entered, and that any notice deficiencies were cured when Woodrow's attorney signed off on the May 14, 1998, agreed judgment. We will address each of these sub-issues in turn.

Timeliness of Woodrow's Rule 60(b) Motion for Relief

8

¶19. Woodrow filed his motion for relief pursuant to M.R.C.P. 60(b)(4) on December 28, 1998, approximately seven months after the agreed judgment was entered. The extent of Cheryl's authority is a partial quote of Rule 60(b). She presents no argument whatsoever that the delay was unreasonable. A motion for relief pursuant to Rule 60(b) alleging that a judgment is void is not subject to the six-month restriction if the delay was reasonable. There being no evidence of unreasonableness, we find that Woodrow's Rule 60(b)(4) motion for relief was timely.

## Whether Woodrow Was Entitled to Notice of the Continuances

¶20. Cheryl cites no relevant authority supporting her proposition that Woodrow was not due any notice of the continuances. We hold that the chancellor was correct in finding the judgment void based on improper service of the summons. Though Woodrow apparently had some type of notice, since he did mail the clerk a letter responding to the complaint, the fact remains that the original service was deficient. Cheryl refers to M.R.C.P. 81(d)(5) which provides, "If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent." However, Cheryl never addresses the question of the entitlement or lack thereof of a defendant to notice of continuances when the process served for the original complaint was defective.

## Deficiencies Cured When Attorney Signed Off on Agreed Judgment

¶21. The extent of Cheryl's argument and citation of authority is that an attorney has implied or apparent authority to consent to a decree against his client if he acts in good faith and without collusion. She again provides no argument or authority providing that an attorney's signing off on an agreed judgment entered in accordance with a judgment later voided is somehow rehabilitated. We are unpersuaded by Cheryl's argument on this sub-issue.

9

**II. WHETHER THE CHANCELLOR ERRED IN HIS MAY 3, 2001, INTERIM ORDER WHEREIN HE DEEMED THE FOUR ADULT CHILDREN OF THE PARTIES WERE NECESSARY PARTIES TO THE ACTION.**

¶22. In this case, Cheryl is attempting to collect unpaid child support years after her children were emancipated. On the issue of who was the proper party to sue Woodrow, the defaulting parent, we have held either the custodial parent or the child can bring the action:

> That the child has been emancipated does not pretermit recovery of vested but unpaid child support. Either the child or the former custodial parent may bring an action against the defaulting parent, although the latter receives any recovery in his/her fiduciary capacity subject to all of the duties and strictures thereof. If by reason of the supporting parent's default, the custodial parent is forced to dip into her own resources beyond what would otherwise be expected of her, she may recover and retain amounts so proved, subject to equitable adjustment should the child's prior needs so suggest.

*Varner v. Varner*, 588 So. 2d 428, 433 (Miss. 1991). *See also Vice v. Dep't of Human Servs.*, 702 So. 2d 397, 401-02 (Miss. 1997). According to *Varner* and its progeny, the custodial parent can sue the defaulting parent for unpaid support notwithstanding the child's emancipation subject to her fiduciary duties to the child/children. The custodial parent would be entitled to reimbursement for expending her own resources if she proves such. Cheryl presented no such proof. Rather, she has doggedly sought the unpaid child support on her own behalf. This motivation is evidenced by her attorney's preparing assignments whereby the children joined the action, waived process, and assigned all of their rights to her.

¶23. Cheryl notes that the children have the opportunity to assert a claim against her for the money that they feel is rightfully theirs. The only child to be deposed, Darren, indicated that he had no claim against his father. Cheryl undoubtedly has standing to pursue the unpaid support, but as we held in *Wilson v. Wilson*, 464 So. 2d 496, 499 (Miss. 1985), "The custodial parent is merely the conduit through which the support money passes for the benefit of the children." It is not clear whether Darren knows he has a

right to the money. Because of a lack of evidence to the contrary, we find it more believable that Cheryl is trying to collect the money for herself and that she has failed to establish that the chancellor was manifestly in error in ordering the children joined as necessary parties.

### III. WHETHER THE CHANCELLOR ERRED IN HIS DETERMINATION OF THE TOTAL AMOUNT OF ARREARAGE.

¶24. Cheryl is correct that the chancellor erred in determining the amount of the arrearage. In computing the overall obligation, the chancellor computed the amount of the arrearage by multiplying the number of months for which Woodrow was obligated to pay (140) by $450 to arrive at a total obligation of $63,000. Actually, the original decree imposed a monthly obligation of $475. This would yield a total obligation of $66,500. For this reason, we reverse the chancellor's computation and, for reasons expressed later as well, remand for recomputation.

### IV. WHETHER THE CHANCELLOR ERRED IN HIS FINDING THAT CHERYL LADNER HAD NO RIGHT OR AUTHORITY TO SEEK DELINQUENT CHILD SUPPORT ON BEHALF OF HER THREE OLDEST CHILDREN SINCE THEY WERE EMANCIPATED AT THE TIME THE PETITION FOR CITATION OF CONTEMPT WAS FILED.

¶25. Cheryl is correct that she has standing to seek the delinquent support notwithstanding the children's emancipated status. This assignment of error is addressed in Issue II where we address the status of the children as necessary parties.

### V. WHETHER THE CHANCELLOR ERRED IN HIS APPLICATION OF THE STATUTE OF LIMITATIONS AS IT APPLIED TO THE ADULT CHILDREN.

¶26. Cheryl argues that the statute of limitations is not applicable in this case, specifically noting that "since the youngest child of four children became emancipated at the time of high school graduation, May of 1995, the statute cannot commence to run against the Plaintiff or

11

any of the children until May of 2002." Miss. Code Ann. § 15-1-43 (Rev. 1995) provides for a seven-year statute of limitations for all actions founded on any judgment rendered by any court of record in this state, but Miss. Code Ann. § 15-1-59 (Rev. 1995) tolls that period until removal of a disability. The chancellor found that David was emancipated in June of 1988, Kevin in June of 1990, Vincent in May of 1993, and Darren in May of 1995.

¶27. Cheryl states that her October 1, 1999, amended complaint related back to the April 3, 1996, DHS petition pursuant to M.R.C.P. 15(c). The chancellor voided and vacated the judgment entered in accordance with the DHS complaint on improper notice grounds. No argument is presented or authority cited to support the proposition that the October 1, 1999, complaint could relate back to the voided April 3, 1996, action, nor is authority cited supporting the proposition that the statute of limitations does not begin to run until the youngest child is emancipated. We find persuasive the Court of Appeals' decision in *Brown v. Brown*, 822 So. 2d 1119 (Miss. Ct. App. 2002), where the court applied the statute of limitations to one emancipated child and accordingly reduced the obligation payable in favor of the child whose claim was not barred. This assignment of error is without merit.

> **VI.    WHETHER THE CHANCELLOR ERRED IN FAILING TO RECOGNIZE AND APPLY THE "WAIVER, JOINDER AND ASSIGNMENT" DOCUMENTS SIGNED BY THE CHILDREN.**

¶28. Cheryl's sole authority in support of her assignment of error that the chancellor erred in failing to recognize the documents by which the children purport to simultaneously join the action, waive all process, and assign all of their rights to their unpaid child support to their mother is Miss. Code Ann. § 11-7-3 (Supp. 2003). Miss. Code Ann. § 11-7-3 does allow for the assignment of choses in action; however, child support benefits belong *to the child* with the custodial parent serving a fiduciary capacity. *Trunzler v. Trunzler*, 431 So. 2d 115, 116 (Miss. 1983). This issue is without merit.

## VII. WHETHER THE CHANCELLOR ERRED IN REDUCING THE AMOUNT OF DELINQUENT CHILD SUPPORT TO 25% OF THE OUTSTANDING ARREARAGE AMOUNT.

¶29.    Since we find that the statute of limitations had run as to the three oldest children, we necessarily agree with the chancellor's reduction in the amount due to 25% of the outstanding arrearage. Cheryl is correct in citing *Varner* for the propositions that the emancipation of one child does not reduce the amount of paying spouse's payment and that child support vests as it accrues. 588 So. 2d at 433. However, she couches her argument in terms of a credit to Woodrow for the unpaid support but never addresses the fact that the claims of the three oldest children were barred by the statute of limitations as the chancellor found. This issue is without merit.

## VIII. WHETHER THE CHANCELLOR ERRED IN FAILING TO APPLY INTEREST TO THE AMOUNT OWED.

¶30.    The chancellor should have awarded interest on the amount owed. As we noted in *Tanner v. Roland*, 598 So. 2d 783, 786 (Miss. 1992), "The delinquent parent is liable also for the interest which has accrued on each unpaid support payment from the time it was due." *See also* *Brand v. Brand*, 482 So. 2d 236 (Miss. 1986) (holding that chancellor erred in failing to award interest on arrearages and holding that interest accrues on each payment at the legal rate from the date due). We reverse the judgment and remand for an award of interest pursuant to Miss. Code Ann. § 75-17-7.

## CROSS-APPEAL

## I. WHETHER THE CHANCELLOR ERRED BY AWARDING CHERYL ATTORNEYS' FEES.

¶31.    Woodrow cross-appeals contesting the chancellor's award of $2,000 in attorneys' fees to Cheryl. The standard of review of a trial court's decision to award attorneys' fees is abuse of discretion. *Miss. Dep't of Wildlife, Fisheries & Parks v. Miss. Wildlife Enforcement Officers' Ass'n*, 740 So.

13

2d 925, 937 (Miss. 1999) (citing **Bank of Miss. v. Southern Mem'l Park, Inc.**, 677 So. 2d 186, 191 (Miss. 1996)).

¶32.    A chancellor can award attorneys' fees to a spouse who succeeds on his or her petition for contempt of the other's child support obligation. **Lahmann v. Hallmon**, 722 So. 2d 614, 623 (Miss. 1998). We find that the chancellor did not abuse his discretion in awarding attorneys' fees to Cheryl. Woodrow was delinquent in his child support obligation, and a suit had to be filed to collect it. Woodrow makes the point that Cheryl technically did not prevail because the chancellor awarded a portion of the arrearage to Darren, not Cheryl. However, it remains that a custodial parent can enforce a child support obligation on the child's behalf. This assignment of error is without merit.

## MOTION TO STRIKE

¶33.    In his brief, Woodrow included a motion to strike Issues VII and VIII on the basis that Darren was awarded a money judgment and never appealed; therefore, we would not have jurisdiction to review the money judgment awarded to him. Simply put, Woodrow complains that Cheryl has no standing to pursue those issues which can only be raised by Darren. Since we affirm the chancellor's substantive findings, we deny Woodrow's motion to strike.

## CONCLUSION

¶34.    We find no error by the chancellor save his erroneous use of $450 instead of $475 in computing Woodrow's total support obligation and his failure to award interest. We affirm the findings of the Pearl River County Chancery Court on all issues but reverse and remand for a recalculation of the award to Darren based on $475 per month and instruct that interest be awarded from the date each payment was due pursuant to Miss. Code Ann. § 75-17-7 and **Brand v. Brand**.

14

¶35.    ON DIRECT APPEAL:  AFFIRMED IN PART; REVERSED AND REMANDED IN PART.  ON CROSS-APPEAL: AFFIRMED.

PITTMAN, C.J., SMITH, P.J., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.  McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.