IRVING, J., for the Court:
¶ 1. Marco S. Raine pleaded guilty to and was convicted of the felony of issuing a bad check. The Jackson County Circuit Court accepted Raine’s guilty plea and sentenced him to serve two years in the custody of the Mississippi Department of Corrections, with thirteen months to serve and the remaining eleven months to be served as post-release supervision.[1] Less than two years after he was sentenced, Raine filed a motion for post-conviction relief (PCR), wherein he alleged that his plea was involuntary and that he received ineffective assistance of counsel. The circuit court denied the motion without an evidentiary hearing. Feeling aggrieved, Raine appeals the denial of his PCR motion, alleging the same complaints as in his original PCR motion.
¶ 2. We find that the factual basis under-girding the guilty plea, along with the assistance of counsel afforded, is problematic; therefore, we reverse the circuit court’s judgment and remand this case to the circuit court for an evidentiary hearing.
FACTS
¶ 3. In December 2006, Raine was indicted for the felony offense of issuing a bad *671 cheek. The charge came about because of a check for $19,864 that Raine had written to Titan Motorsports, LLC. Raine claims that he postdated the check upon an agreement with Titan Motorsports but that Titan Motorsports unilaterally changed the date on the check and then attempted to cash it. Raine claims that Titan Motorsports agreed to sell him a vehicle for $19,864, with payment made by a check in that amount, with the understanding that the check would not be cashed until a month later. Raine contends that Titan Motorsports agreed to this on the condition that Raine would not receive title to his vehicle until a month later, when the check was cashed. Raine has provided multiple documents which appear to support his contentions that the check was originally postdated and that Titan Motorsports knowingly accepted the postdated check.
¶ 4. On August 17, 2007, Raine appeared before the circuit court to plead guilty. After explaining the rights that Raine was waiving by pleading guilty, the circuit court asked Raine to describe the factual basis for his plea:
Q. All right. Tell me what you did. Mr. Raine?
A. Yes, ma’am?
Q. Tell me about your scam.
A. Your Honor, I had an agreement with the salesman that I could purchase the vehicle with a [postdated check and they would hold it. And, for whatever reason, he altered the date on the check the very next day and I guess deposited it into the bank. And that’s the gist of that.
Q. Well, did you have any money in the bank?
A. No, ma’am, that was the purpose of the [postdate. That was the agreement, he would hold the—
Q. Where were you going to get the money?
A. Your Honor, the deal — the agreement was that I could arrange my own financing later. But I had a check coming in from an insurance company that I was going to cover .that with shortly thereafter.
Q. When was that coming in?
A. I’m sorry?
Q. When was that coming in?
A. Well, it was supposed to come in within two weeks. And then later I got a second denial letter, so it wasn’t going to happen anyway. But I had no foreknowledge of that.
Q. How much was the check for?
A. $19,846,1 believe.
[DEFENSE ATTORNEY]: Your Hon- or, there’s also some issue about the car being for sale several days later in the Sun Herald.
Q. So, you took the car with a [postdated check and then you tried to sell it?
A. Your Honor, I believe the check came back on the 7th of March of '06. He called me and said, you know, [h]ey, I’m going to lose my job. I’ve already been — got paid commission, you know. We need to get money for this car. So the only way I could come up with this money is if I sell the car. That’s the only way. I ran an ad on the 7th of—
Q. Well, why didn’t you just take it back to him?
A. Well, he said that he couldn’t because he would have to pay the commission back. He said that they had to fool their floor plan guy in order to get the title.
[[Image here]]
*672 [THE COURT]: You know, I don’t really want to — I’ll just tell yah right now, I’m not real excited about accepting any recommendations on people that won’t tell me the truth. Okay? So, you two sit down. I’m over it.
Mr. Raine, you sit down too. I’m over you too. And I’m not going to accept that recommendation either, so sit down.
¶ 5. On December 5, 2007, Raine again appeared before the circuit court to plead guilty. The following exchange occurred between Raine and the circuit court:
Q. All right. • Mr. Raine, you were charged with felony bad check?
A. Yes, ma’am.
* * *
Q. All right.. Now, has anyone threatened ... you to get you to plead guilty?
A. No, ma’am.
Q. Has anyone promised you anything to get you to plead guilty?
A. No, ma’am.
Q. Has your attorney made any kind of threat or promise to you about anything?
A. No, ma’am.
[[Image here]]
Q. Are ... you pleading guilty to [this charge] because you are guilty and no other reason?
A. Yes, ma’am.
Q. All right. Mr. Raine?
A. Yes, Your Honor?
Q. Tell me what you did.
A. Your'Honor, I—
Q. And don’t' tell me you didn’t do anything. We’ve already been there once.
A. I purchased a. vehicle with a check and had insufficient funds in the account to cover it.
Q. And I assume you knew that?
A. Yes, ma’am.
¶ 6. In September 2009, Raine filed his PCR motion, which was summarily denied.
¶ 7. Additional facts, if necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 8. The Mississippi Supreme Court has announced the applicable standard of review when a circuit court denies a petitioner’s PCR motion:
When reviewing a lower court’s decision to deny a petition for post[-]conviction relief[,] [an appellate court] will not disturb the trial court’s factual findings unless they are found to be clearly erroneous. Bank of Miss[.] v. S[.] Mem’l Park, Inc., 677 So.2d 186, 191 (Miss.1996). However, where questions of law are raised!,] the applicable standard of review is de novo. Id.
Brown v. State, 731 So.2d 595, 598 (¶ 6) (Miss.1999).
¶ 9. Before the circuit court accepted Raine’s guilty plea, it was required to determine that there was a “factual basis for the plea.” Burrough v. State, 9 So.3d 368, 373 (¶ 14) (Miss.2009) (quoting URCCC 8.04(A)(3)). “The factual-basis component of the rule requires that, ‘before it may accept the plea, the circuit court have before it, inter alia, substantial evidence that the accused did commit the legally defined offense to which he is offering the plea.’ ” Id. (quoting Corley v. State, 585 So.2d 765, 767 (Miss.1991)). Ultimately, enough facts must have been presented to convince the circuit court that “the prosecution could prove the accused *673 guilty of the crime charged.” Id. (quoting Corley, 585 So.2d at 767).
¶ 10. Raine claims that his guilty plea was involuntary because his attorney “erroneously advised him as to the elements of the [c]rime of [f]elony [b]ad [c]heek.... Counsel advised Raine that the only element is that, ‘y°u wrote a check, knowing at the time it was written, that you didn’t have sufficient funds to cover [the] check.’ ” Raine claims that his attorney did not inform him that writing a postdated check is not a crime.
¶ 11. Section 97-19-55 of the Mississippi Code Annotated (Supp.2010), proscribes the uttering of a bad check and states in part:
(1) It shall be unlawful for any person with fraudulent intent:
(a) To make, draw, issue, utter[,] or deliver any check, draft[,] or order to obtain money, delivery of other valuable property, services, the use of property or credit extended by any licensed gaming establishment drawn on any real or fictitious bank, corporation, firm[,] or person, knowing at the time of making, drawing, issuing, uttering or delivering said check, draft or order that the maker or drawer has not sufficient funds in or on deposit with such bank, corporation, firm or person for the payment of such check, draft or order in full, and all other checks, drafts or orders upon such funds then outstanding; [or]
(b) To close an account without leaving sufficient funds to cover all outstanding checks written on such account.
(Emphasis added).
¶ 12. In Henderson v. State, 534 So.2d 554 (Miss.1988), the Mississippi Supreme Court reviewed the conviction of Donna Henderson, who had been convicted of passing a bad check under section 97-19-55. The Henderson court found that the evidence supporting Henderson’s conviction was insufficient, and it reversed and rendered the conviction. Id. at 557. The basis of the court’s reasoning was that: “While this check was written on and dated October 4, by agreement it was not to be presented for payment until October 28.... At most ... Mrs. Henderson obligated herself that when the check would be presented on October 28, there would be sufficient funds on deposit on that date.” Id. at 556.
¶ 13. Unquestionably, if someone writes a postdated check, notifies the recipient of the check that it is postdated, and the recipient then knowingly accepts the check, the writer of the check cannot be found guilty of writing a bad check simply because the recipient unilaterally attempted to present it for payment prior to the agreed-upon date. Some further evidence would have to be presented to show that the check’s writer possessed fraudulent intent at the time he wrote the postdated check, regardless of whether there were sufficient funds to cover the check after it was presented prematurely. •
' ¶ 14. Raine has presented compelling evidence to show that the check that he wrote was postdated and that Titan Motor-sports’ salesman unilaterally altered the date on the check and attempted to cash it weeks before they had agreed that the salesman would do so.[2] In fact, the first time that Raine attempted to plead guilty, he informed the circuit court of those facts. *674 The circuit court then rejected his plea. When the circuit court eventually accepted Raine’s plea, Raine admitted only that he wrote a check at a time when he knew he did not then have funds in his bank to cover the check. However, nothing about that admission precludes the possibility that Raine wrote a postdated check that Titan Motorsports had agreed to present at a later date. Notably, Raine never admitted to possessing fraudulent intent when he wrote the check. Raine’s attorney, who spoke several times during the hearings, never addressed Raine’s contention that he had written a valid postdated check.
¶ 15. Under these circumstances, we find that the circuit court should have granted Raine an evidentiary hearing. Raine has presented evidence suggesting that his attorney counseled him that the postdate on the check was not a viable defense; if this was the case, Raine’s attorney was clearly incorrect and gave him poor legal counsel. Furthermore, in the absence of any evidence that Raine possessed fraudulent intent when he wrote the check, there is an insufficient factual basis for Raine’s guilty plea.
¶ 16. Accordingly, we reverse and remand this case for an evidentiary hearing.
¶ 17. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED, AND THIS CASE IS REMANDED FOR AN EVIDENTIARY HEARING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. MAXWELL, J.,. CONCURS IN THE RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Mississippi Code Annotated section 99-39-5 (Supp.2010) allows ''[a]ny person sentenced by a court of record of the State of Mississippi, including a person currently incarcerated [or] on parole or probation ... [to] file a motion to vacate, set aside[,] or correct the judgment or sentence ... or a motion for an out-of-time appeal if the person claims....” The statute does not specifically allow an individual serving a period of post-release supervision to file an appeal or motion, but we see no reason to treat a period of post-release supervision differently from a period of probation or parole. Therefore, we find that Raine’s motion and appeal are timely, even if he has served the first thirteen months of his sentence and is now on post-release supervision.

. Included in the record are documents showing the check before and after the alleged alteration and sale documents related to the vehicle that show the postdate rather than the date of sale. Short of alteration by Raine, there is no explanation in the record for these dates other than Raine and the salesman agreeing to postdate the sale of the vehicle.