# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01701-SCT

*JOHN T. MILLER, ROBERT B. FRYAR SAWMILL AND LUMBER CO., INC. AND TOMMY BIFFLE d/b/a PONTOTOC WOODYARD*

*v.*

*ROY E. PANNELL AND WIFE, NANCY A. PANNELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/18/2000 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| COURT FROM WHICH APPEALED: | UNION COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | B. SEAN AKINS |
| | JOE M. DAVIS |
| ATTORNEY FOR APPELLEES: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 02/14/2002 |
| MOTION FOR REHEARING FILED: | 2/27/2002; denied 5/23/2002 |
| MANDATE ISSUED: | 5/30/2002 |

### BEFORE McRAE, P.J., COBB AND DIAZ, JJ.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. Roy E. and Nancy A. Pannell filed an amended complaint against Robert B. Fryar Sawmill & Lumber Co., Inc.(Fryar's), John T. Miller, and Tommy Biffle d/b/a Pontotoc Woodyard in the Chancery Court of Union County, Mississippi. The complaint alleged a timber trespass. Fryar's Sawmill and Miller filed cross claims against each other, which they later agreed to dismiss. The trial was held on September 9, 2000, and the chancellor found defendants responsible for cutting 2.7 acres of timber on the Pannells' land. The timber was valued at $749.33. The chancellor also found that the defendants' negligence was so gross, indifferent and lacking in good faith that it rose to the level of willfulness. As such, the chancellor awarded $14,908.63 in damages under the authority of Miss. Code Ann. § 95-5-10(2)(1994). The damages are divided as follows:

1. $1,499.86 for double the fair market value of the timber

2. $450.00 for reforestation costs

3. $5,555.00 in statutory damages ($55.00 per tree for 101 trees)

4. $260.00 in statutory damages ($26.00 per tree for 10 trees)

5. $800.00 for surveying costs

6. $850.00 for expert testimony

7. $5,493.77 for attorney's fees

Miller, Fryar's and Biffle filed a timely appeal citing the following issue:

**I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN DETERMINING THAT THE ACTIONS OF THE TIMBER CUTTERS WERE WILLFUL AND AWARDING DAMAGES IN THE AMOUNT OF $14,908.63.**

## FACTS

¶2. The Pannells purchased 18.08 acres of land on February 17, 1996, from Barbara LaSota, John Miller, Renee Harmon, and Marvin Miller. This land shares a common border with land owned by John Miller.

¶3. In 1997, Miller hired Fryar's Sawmill to cut timber on his land. Fryar's Sawmill contracted with Tommy Biffle, a local timber cutter, to cut the timber.

¶4. Before the timber cutters arrived, Miller flagged the east, north, and south boundaries of his property lines, but did not know the exact location of the west property line. According to Miller, he gave the timber cutters a legal description of the land and relied on them to determine where the property lines were and to ensure that Pannell agreed with their measurement. Biffle, however, stated in his deposition that Miller showed him "about" where the property lines were and that Miller never gave him a legal description of the land. Biffle also stated that he and Miller flagged the western boundary together. Miller and Biffle began flagging the western property line at an existing survey pin. At some point, Biffle saw another iron pin and asked Miller about it. Miller said that his property line ran from the first pin to the second pin. Biffle then pointed out to Miller that he had flagged the wrong pin and that was not his property. Biffle then spotted a cleared out area with flags that he thought indicated Miller's property line. Biffle claimed he tried to stay well within what he thought to be Miller's property line. Biffle's deposition was introduced into evidence at trial because Biffle was inexplicably absent from the courtroom the day of the trial.

¶5. An expert witness on timber-cutting, called by Pannell, testified as to the usual practice in this field. When there are no physical landmarks, such as a fence to indicate where the property lines are, the timber cutter should strongly recommend a survey. The witness also testified that most people in this field could come within ten feet of the property line by using a hand compass and a legal description, such as the one found on the deed.

¶6. At the conclusion of the trial, the chancellor ruled as follows:

> Here, it appears to the Court that the owner, Mr. Miller, and the timber company and the cutter said the heck with them (the Pannells), we are going to start cutting, and when they holler we will stop. I don't care whose land it is. That's about the attitude that came across to me today. Mr. Miller was not very convincing, he was very evasive on the witness stand.
>
> In this Court's opinion, I think that there is no doubt in this court's mind that the testimony shows that the negligence of Mr. Miller, of Fryar , and of Biffle was so gross and so indifferent, and lacked good faith so much that it was the same as being willful. And I'm going to award the statutory penalties. I think this is a case that is deserving, and I think this will send out a message to people that get ready to cut timber, you make every effort you can - reasonable effort to establish where the property lines are. In this case there is no evidence before the court, none in the court's opinion that any of you three

truly tried to establish these lines.

## DISCUSSION

¶7. Appellees Roy and Nancy Pannell did not file a brief. We have two options in this situation. The first alternative is to take the appellees' failure to file a brief as a confession of error and reverse. This should be done when the record is complicated or of large volume and "the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error." *May v. May*, 297 So.2d 912, 913 (Miss. 1974). The second alternative is to disregard the appellees' error and affirm. This alternative should be used when the record can be conveniently examined and such examination reveals a "sound and unmistakable basis or ground upon which the judgment may be safely affirmed."*Id.* at 913 (citing *W.T. Raleigh & Co. v. Armstrong*, 165 Miss. 381, 382, 140 So. 527, 528 (1932)).

¶8. Appellants Miller, Fryar's, and Biffle have not made out an apparent case of error, and an examination of the record has shown a sound basis "upon which the judgment may be safely affirmed."

## STANDARD OF REVIEW

¶9. When reviewing a chancellor's findings, this Court employs a limited standard of review. *Reddell v. Reddell*, 696 So.2d 287, 288 (Miss.1997) (citing *Carrow v. Carrow*, 642 So.2d 901, 904 (Miss.1994)). The chancellor's findings will not be disturbed upon review unless the chancellor was manifestly wrong, clearly erroneous or applied an incorrect legal standard. *Reddell*, 696 So.2d at 288. *See Bell v. Parker*, 563 So.2d 594, 596-97 (Miss.1990); *Bowers Window & Door Co. v. Dearman*, 549 So.2d 1309, 1313 (Miss.1989). "The standard of review employed by this Court for review of a chancellor's decision is abuse of discretion." *McNeil v. Hester*, 753 So.2d 1057, 1063 (Miss.2000) (citations omitted).

### I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN DETERMINING THAT THE ACTIONS OF THE TIMBER CUTTERS WERE WILLFUL AND AWARDING DAMAGES IN THE AMOUNT OF $14,908.63.

¶10. Miller, Fryar's, and Biffle contend that the chancellor erred in applying the maximum penal remedy in this case because they proved that they were merely negligent in cutting the Pannells' trees.

¶11. Miss. Code Ann. § 95-5-10, the statute governing timber trespass, was amended in 1989. The new statute eliminated the former good faith defenses and repealed all other statutory authority related to trees cut without the consent of the owner. *McCain v. Memphis Hardwood Flooring Co.*, 725 So.2d 788, 791 (Miss. 1998). The amended statute provides,

(1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and unconditional and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability. To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken

away by the defendant, his agents or employees, without the consent of such owner. The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.

(2) If the cutting down, deadening, destruction or taking away of a tree without the consent of the owner of such tree be done **willfully, or in reckless disregard** for the rights of the owner of such tree, then in addition to the damages provided for in subsection (1) of this section, the person cutting down, deadening, destroying or taking away such tree shall pay to the owner as a penalty Fifty-five Dollars ($55.00) for every tree so cut down, deadened, destroyed or taken away if such tree is seven (7) inches or more in diameter at a height of eighteen (18) inches above ground level, or Ten Dollars ($10.00) for every such tree so cut down, deadened, destroyed or taken away if such tree is less than seven (7) inches in diameter at a height of eighteen (18) inches above ground level, as established by a preponderance of the evidence. To establish the right of the owner prima facie, to recover under the provisions of this subsection, it shall be required of the owner to show that the defendant or his agents or employees, acting under the command or consent of their principal, willfully and knowingly, in conscious disregard for the rights of the owner, cut down, deadened, destroyed or took away such trees.

(3) All reasonable expert witness fees and attorney's fees shall be assessed as court costs in the discretion of the court.

Miss. Code Ann. § 95-5-10 (1994) (emphasis added).

¶12. Cases under the previous statute define "good faith," but not "willfulness" or "reckless disregard," as it pertains to the issue of timber trespass, because willfulness and reckless disregard were not elements of the former statute. One dictionary defines "willful" as "Voluntary and intentional, but not necessarily malicious," and "reckless disregard" as the "Conscious indifference to the consequences (of an act)." Black's Law Dictionary 1276 & 1593 (7th ed. 1999).

¶13. Courts in other states have dealt with the issue of how to define "willfulness" and "reckless disregard" as the terms pertain to timber trespass. In *Hunt v. Jordan*, 333 S.E.2d 569, 570 (S.C. 1985), the court found,

Punitive damages can be recovered for (1) trespass "when a defendant's acts have been willful, wanton or in reckless disregard of the rights of another," *Fox v. Munnerlyn*, 283 S.C. 490, 323 S.E.2d 68, 69 (Ct.App.1984); and (2) conversion when a defendant's acts have been "reckless ... with conscious indifference to the ... rights" of another, *Green v. Waidner*, 284 S.C. 35, 324 S.E.2d 331, 333 (Ct.App.1984). The test for this standard of conduct "is whether [the trespass or conversion] has been committed in such a manner or under such circumstances that [an ordinary person] would ... have been conscious of it as an invasion of [another's] rights." *Rogers v. Florence Printing Co.*, 233 S.C. 567, 106 S.E.2d 258, 263 (1958).

¶14. In *Emporia Lumber Co. v. League*, 105 S.W. 1167 (Tex.Civ.App.1907), the boundary lines of the plaintiffs' property were marked and "readily observed," and, as in the case at hand, the plaintiffs' property adjoined the property where timber cutters were supposed to have cut. The court stated:

The slightest care would have resulted in knowing that they were cutting over on plaintiff's land, and it was either a case of turning the gang loose to cut in that locality, or inexcusable negligence on the part of their foreman to not inform them, and to see to it, that they did not go beyond defendant's line. There is no difference in legal consequences between a willful disregard of the rights of another and a reckless disregard of same.

¶15. In *Louisiana Pac. Corp. v. Smith*, 553 S.W.2d 771, 775 (Tex. 1977) the court turned to *Ripy v. Less*, 55 Tex.Civ.App. 492, 118 S.W. 1084 (1909), in which a timber cutter failed to correctly follow instructions in locating the timber to be cut. In *Ripy*, the boundary lines were not in dispute or in confusion, and the court concluded that the lines were "ascertainable by proper care." As to the cutting, the court stated,

It might not be a malicious act, because not intended to injure the owner. Every person who cuts timber upon his own land, or who intends to do so, owes a duty to an adjoining landowner to ascertain the boundary line of the adjoining land, if he can, with diligence and care, so as to avoid trespassing upon such adjoining land; and, if he neglects such duty, and negligently and carelessly or recklessly cuts beyond his own premises, he cannot be said to have done so by mistake. The neglect of such duty is in itself evidence of a want of good faith.

¶16. In *Grays Harbor County v. Bay City Lumber Co.*, 289 P.2d 975, 980 (Wash. 1955), the court found that loggers had wrongfully, but not willfully, cut another's timber since they did attempt an "amateur survey" because a professional surveyor was not available. The court found that the trespass was not willful or in reckless disregard "of probable consequences although they had been negligent in proceeding without a reliable survey." In the case at hand, there is no evidence suggesting Miller and Biffle attempted even an "amateur survey."

¶17. As stated previously, the standard of review of chancellor's decisions is not easily overcome. The chancellor was not "manifestly wrong" or "clearly erroneous" and did not abuse his discretion in deciding that Miller, Fryar's, and Biffle acted with "reckless disregard" in failing to determine a more precise boundary line. The evidence supports the chancellor's finding that neither Miller nor Biffle ever used a legal description of the land to mark the property lines and that neither of them ever took adequate measures to ensure they were not cutting timber on the Pannells' land. Miller's testimony that he gave the cutters a legal description of the land is contradicted by Biffle. This insinuates "reckless disregard" on Miller's part. Biffle also demonstrated "reckless disregard" by not asking for a survey, or at least a legal description of the land when it became apparent that Miller was not certain of the location of his western property line.

**CONCLUSION**

¶18. The chancellor's findings that Miller and Biffle showed a reckless disregard for whose trees they were cutting and that Miller was evasive and not forthcoming on the witness stand is supported by evidence in the record. While the award of damages in this case is the harshest allowed by law, we find that the award is warranted. Therefore, the judgment of the Union County Chancery Court is affirmed.

¶19. **AFFIRMED.**

**McRAE AND SMITH, P.JJ., WALLER, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY. PITTMAN, C.J., NOT**

**PARTICIPATING.**