BARNES, J.,
for the Court:
¶ 1. The Monroe County Chancery Court entered a final judgment in favor of Charles D. Holloway, naming him the sole owner of funds from an interpleader action, and denying, without prejudice, Richard Thornton priority to the funds through his writ of garnishment. Thornton appeals the chancellor’s judgment, claiming that the funds were vested in Holloway prior to judgment; therefore, Thornton had a claim to a portion of the funds. Finding error, we reverse and render judgment in favor of Thornton.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. This appeal originated when Thornton instituted action for Holloway’s failure *127 to repair and restore Thornton’s 1968 Chevrolet truck. The chancery court entered a default judgment against Holloway on November 13, 2003, ordering Holloway to complete the repair and restoration of the truck and to return the truck to Thornton within thirty days. The judgment also stated that, if Holloway failed to comply, then he must return the truck intact, reimburse Thornton his payment of $7,378, and pay $2,500 in punitive damages. Holloway did not repair and/or restore the truck, nor did he return the truck to Thornton and pay the fees. Thornton filed a Complaint for Citation for Contempt. The Monroe County Chancery Court entered another order on August 24, 2004, holding Holloway in contempt and requiring him to pay $2,500 for Thornton’s attorney’s fees, plus court costs of $150. These fees were in addition to the $9,878 already owed from the November 2003 order. However, no payments were ever made by Holloway.
¶ 3. On March 16, 2005, Amory Federal Savings and Loan Association (Amory Federal) filed a complaint for an inter-pleader, seeking to determine ownership of $15,598.56, which the bank held. These funds were a result of a previous land transaction between Holloway and John Kendall, the named defendants in the in-terpleader action. In March 1995, Kendall had purchased land in Monroe County, using a loan from Amory Federal. The loan required Kendall to maintain fire insurance. When Kendall failed to comply with the requirement, Amory Federal purchased the fire insurance and charged the premium to Kendall’s account as authorized by the loan agreement. In 1999, Kendall conveyed the property to Holloway, providing that Holloway would make the payments to Amory Federal. The house subsequently was destroyed by fire, and Amory Federal was paid $35,000 under the fire insurance policy. After paying off the remaining mortgage debt, $15,598.56 remained. This amount is the basis for the interpleader action.
¶ 4. Thornton filed a writ of garnishment against Amory Federal on March 18, 2005, in connection with his August 2004 judgment. After Amory Federal filed an answer to the writ of garnishment claiming that the proper party to the funds had yet to be determined, Thornton filed an answer in the nature of an interpleader and a counter-complaint, stating that his writ of garnishment constitutes a first hen upon the interplead funds and that Holloway owed him $12,588 (the original $12,528 plus a $60 enrollment fee and garnishment costs).
¶ 5. On May 16, 2005, the chancery court entered an order consolidating the 2003 and 2005 causes: Cause Number 2005-144-48-L, the interpleader action filed by Amory Federal, and Cause Number 2003-501-48-L, the original judgment against Holloway. This was done to enable the chancery court to “order the proper disbursement of the funds in one cause of action, and when the funds were disbursed, Cause Number 2005-[144]-48-L would be closed. At the same time, any other matters or any further proceedings could continue in Cause Number 2003-501-48-L.” In that order, it was also noted that a default judgment had been entered against Kendall, “leaving Charles Holloway and Amory Federal as the only parties in that action.”
¶ 6. A hearing was held on June 6, 2005. As a result, on August 1, 2005, the chancery court, nunc pro tunc to the June 6, 2005 hearing, granted relief to Amory Federal, allowing it to interplead its claims to the funds and releasing it from any claims by Thornton or Holloway. The funds were ordered to be held by the chancery court. Meanwhile, on June 24, *128 2005, Thornton had filed another writ of garnishment against the Monroe County Chancery Clerk’s office, the custodian of the insurance funds. The chancery clerk’s office filed an answer disclaiming any indebtedness to Thornton.
¶ 7. During the course of these proceedings, Holloway entered bankruptcy. On April 6, 2006, upon agreement among the parties and the bankruptcy trustee, the United States Bankruptcy Court for the Northern District of Mississippi entered an order granting leave from an automatic stay, allowing the chancery court to pro-, ceed with the cause. Hearings were conducted by the chancery court on May 22, 2006, and June 13, 2006. Holloway argued at the May 2006 hearing that the garnishment action was premature. A motion for partial judgment on the pleadings was also filed by Thornton, seeking a determination by the chancery court that the funds be adjudged the property of Holloway, in order that they may be subject to Thornton’s writs of garnishment. Holloway, in his answer, contended that Thornton lacked standing to bring the motion.
¶ 8. At the June 13, 2006, hearing, the chancery court entered a bench opinion, stating that the funds did not vest in Holloway until the court’s judgment; therefore, “any writ of garnishment would be premature in the eyes of [the] Court to secure those funds until they have actually vested in [Holloway].” The funds were then ordered to be paid to Holloway.[1] The chancery court then issued a final judgment on May 7, 2009, nunc pro tunc to its June 2006 bench opinion. The final judgment was “entered without prejudice to the Defendant, Richard Thornton, to pursue whatever writs of garnishment he may desire to proceed[.]” Thornton filed a motion to alter or amend the judgment or, in the alternative, for a new trial, which the chancery court denied on July 1, 2009. Thornton now appeals, claiming that the court erred in denying his motion. Finding that Holloway confesses error, we reverse and render the judgment of the chancery court.
STANDARD OF REVIEW
¶ 9. An appeal from a chancery court’s decision is given a limited standard of review, using an abuse-of-discretion standard. Deliman v. Thomas, 16 So.3d 721, 724 (¶ 13) (Miss.Ct.App.2009) (citing Miller v. Pannell, 815 So.2d 1117, 1119 (¶ 9) (Miss.2002)). “The Court will not disturb a chancellor’s findings unless they are manifestly wrong or clearly erroneous or the court has applied an incorrect legal standard.” Id. (citing In re Estate of Ladner v. Ladner, 909 So.2d 1051, 1054 (¶ 6) (Miss.2004)). Issues of law are reviewed de novo. Id.
DISCUSSION
¶ 10. The appellee, Holloway, has not filed a brief with this Court. When this situation occurs, this Court has two options. First, we may “take the ap~ pellee[’]s failure to file a brief as a confession of error and reverse.” J.J. v. Smith, 31 So.3d 1271, 1273 (¶ 10) (Miss.Ct.App.2010) (quoting Miller, 815 So.2d at 1119 (¶ 7)). This option is favored “when the record is complicated or of large volume and ‘the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error.’ ” Id. However, if “the record can be conveniently examined and such examination reveals a ‘sound and unmistakable basis or ground *129 upon which the judgment may be safely affirmed[,]’ ” we may “disregard the appel-lee[’s] error and affirm.” Id.
¶ 11. Upon review, we cannot find that the chancery court provided “a sound and unmistakable basis” that would excuse Holloway’s confession of error. In the bench opinion issued on June 13, 2006, the chancellor stated:
This Court finds as a matter of law that when this policy was purchased and the proceeds paid from these funds — by the payment of these funds that any sur-plusage or overage therefrom became the property of Charles Holloway. And, accordingly, any writ of garnishment would be premature in the eyes of this Court to secure those funds until they have actually vested in him. They have not vested in him until now, even though the insurance policy allowed the existence of the funds by virtue of the fact that [Amory Federal] actually purchased the policy. This was on property owned by Mr. Holloway. So the whole subject property was the subject of the insurance policy that was held by [Amory Federal] to protect its own interest. Thereby, Mr. Holloway became, really, the recipient of the entitlement owner of these funds by default.
(Emphasis added). Stating that this was a case of first impression, the chancery court cited no authority for its ruling.
¶ 12. The Mississippi Supreme Court has consistently held over the years “that insurance policy proceeds are properly the subject of garnishment.” Briggs v. Benjamin, 467 So.2d 932, 934 (Miss.1985). In Meridian Land & Industrial Co. v. J.B. Ormond & Co., 82 Miss. 758, 35 So. 179, 180 (1903), the supreme court specifically held that a property-insurance claim, that had been adjusted and submitted to the court for litigation to determine whether the judgment creditor or insured had claim to the funds, was subject to garnishment. The supreme court stated that:
The money due or the right of action under the policy is the property of some one, and as such can be subjected to the owner’s debts by proper legal process. Then to whom does the money or right of action belong? By operation of law, it belongs to the person deemed by the law to have been the owner of the property destroyed; and, the moment its ownership is fixed, it becomes liable, like all other property, to the debts of its owner.
Id. at 180-81. Admittedly, this case is not precisely on point with Meridian Land as the actual insured in this case was Amory Federal, not Holloway. However, as the chancellor noted in his bench opinion, Amory Federal “actually purchased an insurance policy insuring the interest of Mr. Holloway in this property,” and Amory Federal disclaimed any ownership in the surplus funds.
¶ 13. Further, although the chancellor in this case claimed that the funds were not vested in Holloway until July 2006, Kendall, the only other defendant in the initial interpleader action, had no vested interest in the funds by virtue of the default judgment entered against him. As the chancellor said, Holloway “became ... the recipient of the entitlement owner of these funds by default.” Thus, when Kendall no longer had any claim to the funds and the funds were handed over to the registry of the court by virtue of the August 1, 2005, nunc pro tunc order, only Thornton and Holloway remained as claimants to the insurance surplus funds. As a result, applying the rationale from Meridian Land, these funds were subject to Thornton’s second writ of garnishment issued to the Monroe County Chancery Clerk.
¶ 14. We find that the chancery court erred in finding that Thornton’s writ of *130 garnishment was premature; consequently, there was no “sound and unmistakable basis” to excuse Holloway’s confession of error. We reverse and render the judgment of the chancery court.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.

. As Holloway was currently in bankruptcy, the funds were actually to be paid to the Chapter 13 Trustee.