LEE, C.J.,
for the Court:
¶ 1. This appeal arises from Glenn Wheeler challenging the validity of Festus Wheeler’s will and two deeds to property. The will and the deeds awarded the estate and the property to Glenn’s brother Scott. The chancellor found that although Festus and Scott had a confidential relationship, there was no undue influence.
FACTS
¶ 2. Festus Wheeler died testate on December 12, 2008. At the time of his death, Festus had three living sons, Glenn, Scott, and Michael, who was institutionalized. Scott, who was unemployed at the time of trial and had been unemployed for most of his adult life, lived with Festus at the *692 family home on Military Road in Columbus, Mississippi. Scott testified that Fes-tus had a stroke in 2005, and his health had been deteriorating since that time. Because of Festus’s declining health, Scott drove Festus anywhere he needed to go. Festus broke his leg in 2007 and became bedridden until his death in 2008. Scott testified that he prepared Festus’s meals for him, fed him, administered his medication, as well as performed the household chores.
¶ 3. In 2004, Festus signed his first will. In this will, Michael was to receive $500, and Scott was to receive Festus’s truck and the home on Military Road. All other property and the residual of the estate was to be divided equally between Glenn and Scott.
¶ 4. In the summer of 2005, Glenn moved into the home on Military Road with Festus and Scott. Glenn was also unemployed but helped Scott take care of Festus. Both sons lived off Festus’s income from Social Security and VA disability and checks from an oil lease, a hunting lease, and a government program. Prior to June 2008, Festus, Scott, and Glenn were all signatories on Festus’s accounts. Both Glenn and Scott testified that Festus was aware of their spending habits.
¶ 5. According to Scott, Glenn took $10,000 from one of Festus’s accounts to start a gunsmithing business. While Glenn stated that the business was for both him and Scott, Scott testified that he was not interested in going into business with Glenn. Around this time, Scott began transferring funds out of the accounts to which Glenn had access. Scott testified that Festus had given him permission to transfer the funds so that Glenn would not have access to them.
¶ 6. On June 8, 2008, Festus met with Scott and Glenn to discuss the proceeds from the hunting lease. Scott testified that Festus confronted Glenn regarding the whereabouts of the proceeds. Glenn testified that he could not recall what happened to them. Scott testified that Festus demanded Glenn repay the funds, and when Glenn refused to give the money back, Festus told him to leave the house that night. Glenn testified that Scott, not Festus, told him to leave. However, Scott and Glenn both agree that Festus informed Glenn that he would be changing his will.
If 7. On June 12, 2008, Festus suffered a heart attack and was hospitalized. Four days later while in the hospital, Festus executed a second will. This will left his entire estate to Scott. On October 6, 2008, Festus executed two deeds which transferred the home on Military Road and all other real property located in Lowndes County, Mississippi, and Lamar County, Alabama, to Scott.
PROCEDURAL HISTORY
¶ 8. On October 15, 2009, Glenn brought suit against Scott based on undue influence and sought to set aside Festus’s will and the property deeds Festus had made to Scott. After a trial was held in Lowndes County Chancery Court, the chancellor found that a confidential relationship existed between Festus and Scott. However, Scott was able to rebut by clear and convincing evidence the presumption of undue influence regarding both the will and the deeds. The chancellor upheld the validity of the will and the two deeds. The chancellor also found, “As to the various bank accounts and [cjertificates of [d]eposit, the requisite proof was not presented with regard[ ] to undue influence so as to alter the ownership of the accounts as they existed at [Festus’s] death.”
¶ 9. Glenn now appeals arguing that the trial court erred in determining the will *693 and deeds were not the product of undue influence.
STANDARD OF REVIEW
¶ 10. “On review, a chancellor’s findings of fact will not be disturbed unless those findings are manifestly wrong, clearly erroneous, or based upon an erroneous legal standard.” In re Last Will & Testament of Carter, 948 So.2d 455, 457 (¶8) (Miss.Ct.App.2007). However, issues of law are reviewed de novo. Thornton v. Holloway, 49 So.3d 125, 128 (¶ 9) (Miss.Ct.App.2010).
¶ 11. “If the [Chancellor’s findings are supported by substantial! ] credible evidence in the record, this Court will not reverse.” Wright v. Roberts, 797 So.2d 992, 997 (¶ 14) (Miss.2001).
DISCUSSION
¶ 12. Mississippi law is well settled regarding fiduciary or confidential relationships and undue influence. Id. at 998 (¶ 16). This law has been applied to both testamentary and inter vivos gifts. Id. When asserting the issue of undue influence, the plaintiff must “demonstrate, by clear and convincing evidence, the existence of a confidential relationship between a grantor and a defendant grantee[.]” Howell v. May, 983 So.2d 313, 318 (¶ 14) (Miss.Ct.App.2007). Once the confidential relationship has been established by clear and convincing evidence, “the burden of proof shifts to the benefieiary/grant-ee to show by clear and convincing evidence that the gift was not the product of undue influence.” Wright, 797 So.2d at 998 (¶ 16).
¶ 13. To determine if a confidential relationship exists, the chancellor must determine:
(1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has [his] medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.
Id. at (¶ 18)’ (quoting In re Estate of Dabney, 740 So.2d 915, 919 (¶ 12) (Miss.1999)). The chancellor relied on Wright and found that Festus and Scott had a confidential relationship. The chancellor went so far as to find that “Glenn established by clear and convincing evidence that all seven factors used to determine a confidential relationship were met.”
¶ 14. The record is clear that Scott took care of Festus, maintained a close relationship with him, provided transportation and medical care for him, and maintained joint accounts with him. Also, there was sufficient evidence presented that Festus was physically weak, was of advanced age and poor health, and had given Scott rights through a power of attorney. Therefore, we agree with the chancellor that a confidential relationship between Scott and Festus existed.
¶ 15. Since Glenn met his burden by clear and convincing evidence, the burden shifted to Scott to prove by clear and convincing evidence that (1) Scott acted in good faith; (2) Festus had “full knowledge and deliberation of his actions and their consequences”; and (3) Festus acted on the “[a]dvice of (a) [a] competent person, (b) disconnected from [Scott] and (c) devoted wholly to [Festus’s] interests.” Murray v. Laird, 446 So.2d 575, 578 (Miss.1984) (citations omitted).
I. GOOD FAITH
 ¶ 16. The factors to determine if Scott acted in good faith include:
*694 (a) ... the identity of the initiating party in seeking preparation of the instrument, (b) the place of the execution of the instrument and in whose presence [the execution took place], (c) what consideration and fee were paid, if any, and (d) by whom [they were] paid, and (e) the secrecy or openness [surrounding] the execution of an instrument.
Hill v. Harper, 18 So.3d 310, 317 (¶ 20) (Miss.Ct.App.2009) (quoting Wright, 797 So.2d at 1000 (¶ 24)). The chancellor found that Scott acted in good faith. From a reading of the record, we agree. While there was proof elicited that Scott contacted attorney Dudley Carter, now deceased, to draft Festus’s new will, Festus spoke via telephone to Carter about the terms and conditions he wanted in the will. The will was executed while Festus was in the hospital, and Scott was not present when the will was executed. Although Carter was paid for the drafting and administering of the will, it is unclear if Festus wrote the check himself or if Scott wrote the check for him. One thing that is clear from the testimony given was that Festus intended to change the will. Both Scott and Glenn testified to that fact.
¶ 17. Turning to the deeds, evidence was presented that Scott acted in good faith with those as well. Titus Bowen, a longtime friend of Festus, testified that Festus told him that he knew Glenn would try to challenge the will and that was why he deeded the property to Scott. Bowen testified that although Festus’s health was fading, his mind was not. The deeds were executed at the home on Military Road by Carter’s paralegal, Terri Pittman. Pittman testified that Festus read the deeds, that he indicated that deeding the property to Scott was his intention, and that he understood what he was doing. Additionally, she testified that Festus paid for the preparation of the deeds.
II. FULL KNOWLEDGE AND DELIBERATION
¶ 18. To determine if Festus had full knowledge and deliberation of his actions and their consequences, these factors must be considered:
(a) the grantor’s awareness of his total assets and their general value, (b) an understanding by him of the persons who would be the natural inheritors of his bounty under the laws of descent and distribution or under a prior will and how the proposed change would legally affect that prior will or natural distribution, (c) whether non-relative beneficiaries would be excluded or included[, and] (d) [the grantor’s] knowledge of who controls his finances and business and by what method, and if controlled by another, how dependent ... the grantor/testator [is] on him and how susceptible to his influence.
Id. at 319 (¶ 26) (quoting Wright, 797 So.2d at 1001 (¶ 31)).
¶ 19. The chancellor noted that the only proof Scott offered regarding Festus’s full knowledge and deliberation of his actions and the consequences of those actions was testimony by Pittman and Bowen. Pittman testified that after Carter discussed the will with Festus, she prepared the will according to Carter’s instructions. Although Pittman could not recall who was present when the will was executed other than herself, Carter, and Festus, she did state that Carter normally had the testator execute the will only in the presence of Carter and herself. While Pittman could not recall the particular questions Carter asked Festus, she did state that Festus answered all the questions asked of him.
¶ 20. As for the deeds, as stated above, Pittman and Bowen both testified that *695 Festus intended to deed the land to Scott. Additionally, Bowen stated that Festus did not want Glenn to have the property because he wanted it to remain in the family and he feared that Glenn would sell the property.
III. INDEPENDENT CONSENT
¶ 21. One way for Scott to show that Festus exhibited independent consent and action was to provide “[ajdvice of (a) [a] competent person, (b) disconnected from [Scott] and (c) devoted wholly to [Festus’s] interests.” Murray, 446 So.2d at 578. The chancellor found that Festus received independent advice from Carter both when he executed his second will and when he deeded the property. This Court agrees.
¶ 22. The chancellor did not abuse her discretion in finding that Glenn proved by clear and convincing evidence that a confidential relationship existed between Fes-tus and Scott. Additionally, she did not err in finding that when the burden shifted to Scott, he proved by clear and convincing evidence that he acted in good faith, Fes-tus had full knowledge and deliberation of his actions, and Festus received independent advice. Therefore, we affirm.
¶ 28. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. ROBERTS, J, CONCURS IN PART AND IN THE RESULT.