# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00591-COA

## CONSOLIDATED WITH

## NO. 2015-CA-01280-COA

IN RE ESTATE OF RAE C. SAGET: KAPPI     APPELLANT
SAGET JEFFERS

v.

KORRI SAGET            APPELLEE

DATE OF JUDGMENT:    03/30/2017
TRIAL JUDGE:      HON. MARIE WILSON
COURT FROM WHICH APPEALED: WARREN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:  DAVID M. SESSUMS
ATTORNEY FOR APPELLEE:   WREN CARROLL WAY
NATURE OF THE CASE:    CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:      AFFIRMED - 04/03/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. This appeal arises from Kappi Saget Jeffers challenging the validity of changes made by her mother, Rae Saget, to beneficiary designations for four of her mother's investment accounts, and her mother's will. The issue before us is the validity of her mother's changes to the beneficiaries for the investment accounts. The issue of the will's validity is not before this Court.[1] Following the trial on the will's validity, the parties agreed that the necessary

---

[1] The issue of the will's validity was tried before a jury, which resulted in a mistrial.

proof was before the court and a final judgment should be entered regarding the beneficiary designations for the investment accounts. In her final judgment, the chancellor found that Rae possessed the capacity to make the changes to her investment-account beneficiaries. The chancellor also found that Kappi failed to prove undue influence by clear and convincing evidence. Concerning the allegation that Korri Saget, Kappi's sister, had unduly influenced Rae, the chancellor did not find that the required confidential relationship existed between Korri and Rae. Rather, the chancellor discussed the testimony presented on whether a confidential relationship existed. Kappi appeals from this decision. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2.    Rae died on January 6, 2014 in Vicksburg, Mississippi. Her husband predeceased her, and Rae was survived by her two children Kappi and Korri. Kappi lived in Vicksburg, and Korri lived in Houston, Texas. At the time of her death, Rae owned four investment accounts.

¶3.    Rae opened these four investment accounts with Kerry Ricks at Morgan Stanley Financial Service Company in 2006. One of these accounts, an Individual Retirement Account (IRA), required at least one named beneficiary. Rae named her daughters as equal beneficiaries. The other three accounts, known as Transfer-on-Death (TOD) accounts, did not require a named beneficiary, but rather that Rae designate to whom the money was to be

transferred upon her death.[2] Rae designated that the money in these accounts should transfer to both daughters equally upon her death.

¶4.     For the next eight years—from 2006 until her death—Ricks assisted Rae with her Morgan Stanley accounts, usually speaking with her about her investments twice a year. On August 22, 2012, Rae called Ricks and gave him instructions to remove Kappi as a beneficiary on the IRA and to remove her as a transferee (beneficiary) upon death from the other three accounts. Later that same day, Rae arrived alone in Rick's office and signed the required paperwork, removing Kappi from all four of her Morgan Stanley accounts. Rae died over a year later on January 6, 2014.

## PROCEDURAL HISTORY

¶5.     On February 18, 2014, Korri filed a petition to probate Rae's will followed by Kappi's "Answer to Petition to Probate Will and Counter-Complaint to Set aside Conveyance of Personal Property and for recovery of Assets." In her answer and counter-complaint, Kappi alleged that Rae's 2012 will was invalid because Rae lacked testamentary capacity and the will was a product of undue influence, requesting a trial by jury on that issue. She also alleged that Rae lacked capacity to put Korri's name as the sole beneficiary and that the change in beneficiary was a product of undue influence. The issue of the will's validity was

---

[2] For the remainder of this opinion, the IRA account and TOD accounts are collectively referred to as "investment accounts."

3

tried before a jury and resulted in a mistrial.[3]

¶6. Additionally, the parties agreed that the evidence presented to the jury during the will contest was the same evidence involved in Kappi's assertion that the change in investment-account beneficiaries was a product of undue influence. Therefore, the attorneys, presenting no more evidence, agreed that a judgment could be entered regarding the investment accounts. Accordingly, the chancellor entered a "Final Judgment" denying Kappi's petition for the recovery/collection of assets and the counterclaim to set aside the conveyance of personal property and for recovery of assets. This judgment previously was appealed wherein this Court found that the "Final Judgment" was not certified pursuant to Rule 54(b) and dismissed the appeal for lack of jurisdiction.[4]

¶7. On March 30, 2017, the chancellor amended her final judgment to include a Rule 54(b) certification and again denied Kappi's petition for the recovery/collection of assets and counterclaim to set aside the conveyance of personal property and for recovery of assets. This appeal followed.

**STANDARD OF REVIEW**

---

[3] The record reflects that the final judgment that was appealed is the "Amended Final Judgment" dated March 30, 2017, which discusses only the four investment accounts and explicitly states: "The validity of the last will was submitted to a jury which resulted in a mistrial. It is not an issue presently before the court."

[4] The 2015 appeal was dismissed on March 21, 2017. *See Jeffers v. Saget*, 235 So. 3d 103 (Miss. Ct. App. 2017). After dismissal, the chancellor amended the judgment to include a Rule 54 certification, and the present appeal was brought. Therefore, the 2015 appeal and present appeal were "consolidated" for record purposes.

¶8.     "This Court reviews the chancellor's decisions under an abuse of discretion standard." *Estate of McCorkle v. Beeson*, 27 So. 3d 1180, 1184 (¶11) (Miss. Ct. App. 2009). Under this standard, this Court will not "disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *In re Estate of Hart*, 20 So. 3d 748, 752 (¶10) (Miss. Ct. App. 2009) (internal quotations omitted). Therefore, "[i]f the Chancellor's findings are supported by substantial, credible evidence in the record, this Court will not reverse." *Wright v. Roberts*, 797 So. 2d 992, 997 (¶14) (Miss. 2001). This is similarly true "whether the fact be found expressly or by necessary implication" and "whether the finding of fact relates to an evidentiary fact or . . . ultimate fact." *Spain v. Holland*, 483 So. 2d 318, 320 (Miss. 1986). Therefore, "where a chancellor does not make explicit findings, this Court on appeal will assume all disputed issues were resolved in favor of the appellees." *Ross v. Brasell*, 511 So. 2d 492, 495 (Miss. 1987). However, issues of law are reviewed de novo. *In re Estate of Hart*, 20 So. 3d at 752 (¶10).

**DISCUSSION**

¶9.     Kappi raises three issues on appeal. First, she argues that the chancellor erred in finding that she, as the contestant, had the burden of proving undue influence. Secondly, she argues that the chancellor erred by not finding that once a confidential relationship was found between Korri and Rae, a presumption of undue influence arose. Thirdly, she argues that the chancellor erred in applying an incorrect legal standard regarding the presumption of undue influence. Finding that the chancellor's determination was not manifestly in error, we affirm.

5

¶10.   "Mississippi law is well-settled regarding . . . confidential relationships and undue influence." *Wheeler v. Wheeler*, 125 So. 3d 689, 693 (¶12) (Miss. Ct. App. 2013). This law applies equally to testamentary and inter vivos gifts. *Id.* When asserting undue influence, the initial burden is on the contestant/plaintiff to show "by clear and convincing evidence, the existence of a confidential relationship between a grantor and a defendant grantee[.]" *Howell v. May*, 983 So. 2d 313, 318 (¶14) (Miss. Ct. App. 2007). The supreme court has stated that such a "confidential relationship arises when a dominant, over-mastering influence controls over a dependent person or trust, justifiably reposed." *Wright v. Roberts*, 797 So. 2d 992, 998 (¶17) (Miss. 2001). Once the existence of a confidential relationship is shown, a presumption of undue influence arises, and "the burden of proof shifts to the beneficiary/grantee to show by clear and convincing evidence that the gift was not the product of undue influence." *Id.* at (¶16). Further, the supreme court has enumerated several factors to be considered when determining the existence of the confidential relationship:

> (1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.

*In re Estate of Lane*, 930 So. 2d 421, 425 (¶13) (Miss. Ct. App. 2005) (quoting *In re Dabney*, 740 So. 2d 915, 919 (¶12) (Miss. 1999)).

¶11.   In the present case, Kappi asserts that the chancellor found that the required

6

confidential relationship existed, and, therefore, the burden shifted to Korri to prove the non-existence of her undue influence over Rae. However, Kappi's assertion is neither supported by the evidence nor the record. The chancellor did not make a finding that Kappi had proven the required confidential relationship existed between Rae and Korri.[5] Moreover, in her judgment, the chancellor discussed and analyzed all seven of the *Lane* factors. From this analysis it is apparent that there was a lack of clear and convincing evidence of the existence of the required confidential relationship.

¶12.    The chancellor, in her discussion of the *Lane* factors, found that: (1) insufficient evidence was produced to show Rae was taken care of by others; (2) Rae and Korri had a close relationship; (3) insufficient evidence was produced to show Rae was provided transportation or medical care by others; (4) Rae and Korri maintained a joint bank account; (5) Rae was not physically or mentally weak as she "knew what she wanted and was very clear about it;" (6) Rae was in poor health; and (7) there was no power of attorney. These determinations by the chancellor were supported by substantial evidence. We further note that Korri resided in Houston, Texas and Rae continued to live in Vicksburg, Mississippi until her death—over a year after the changes were made to the investment account designations. The chancellor was correct in not making a finding that clear and convincing evidence showed that Korri had exerted the required confidential relationship over Rae. The

_____

[5] The chancellor's "Amended Final Judgment" does not find that a confidential relationship existed nor does it explicitly state that Kappi failed to prove a confidential relationship by clear and convincing evidence.

chancellor went further, finding that there was no undue influence exerted upon Rae in changing the beneficiaries on the investment accounts.

¶13. During the hearing on the matter, the chancellor heard from several witnesses including some of Rae's family and friends. The chancellor found that there was conflicting testimony as to whether Rae was taken care of by others and whether Rae was provided transportation and medical care by others. Therefore, it was the chancellor's job as trier of fact to determine which version she found more credible. *LeBlanc v. Andrews*, 931 So. 2d 683, 689 (¶19) (Miss. Ct. App. 2006).

¶14. While the record clearly shows that Rae was in poor health, having had numerous surgeries and health issues, the record also indicates that she was a strong-willed woman who "knew what she wanted and was very clear about it." Several non-family witnesses who spoke with Rae on the day she made the changes to the investment account beneficiaries testified that Rae appeared neither physically nor mentally weak. One such witness, Mittie Town Warren, a close friend of Rae's, testified that "[Rae] knew what she had" and that "[w]hen she made her mind to do something, then that's what she was going to do and she did it." Further, Warren testified that she would see Rae two to three times per week and that on August 23, 2012, "[Rae] knew exactly what she was doing. Nobody influenced her." Notwithstanding the assertion of Kappi on appeal, the chancellor did not find that Korri had the required confidential relationship with Rae. Furthermore, the chancellor was correct in

8

finding that the beneficiary changes to the accounts were valid.[6]

## CONCLUSION

¶15.    After reviewing the record, we find that the chancellor did not commit manifest error in not finding that Kappi proved undue influence by clear and convincing evidence. The chancellor clearly considered and assessed all seven *Lane* factors for a confidential relationship. As the chancellor did not find that the required confidential relationship existed, the presumption of undue influence never arose for Korri to rebut. Therefore, the chancellor did not commit manifest error in finding that the changes in the investment account beneficiaries were valid.

¶16.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.**

---

[6] Though appellate courts would prefer that trial court judges make explicit findings on issues we review on appeal, when chancellors make decisions based upon substantial evidence and discuss the required factors leading to informed decisions, we should not reverse for form over substance. *See Spain v. Holland*, 483 So. 2d 318, 320 (Miss. 1989).