# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00940-COA

IN THE MATTER OF THE ESTATE OF                **APPELLANT**
CYNTHIA CAMILLE BAGWELL STIMLEY,
DECEASED: MORTON LAW FIRM, PLLC

v.

DOT MERCHANT, AS EXECUTRIX OF THE           **APPELLEES**
ESTATE OF CYNTHIA CAMILLE BAGWELL
STIMLEY, DECEASED, AND KAHRNA
STIMLEY WASHINGTON

| | |
|---|---|
| DATE OF JUDGMENT: | 07/28/2023 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RONALD C. MORTON |
| | JOSIAH CHARLES BURNS |
| ATTORNEY FOR APPELLEES: | ALAN D. RHEA |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 10/08/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     This appeal concerns the award of attorney's fees and expenses in an estate action in the Madison County Chancery Court. The merits of the estate contest and other related proceedings and issues are not before this Court. The chancery court awarded Morton Law Firm $5,000.00 in attorney's fees and expenses to be paid by Cynthia Stimley's estate after the Morton Law Firm requested $48,167.75 in attorney's fees. Following a thorough review of the record before us, we find that the court did not demonstrate a consideration of the

required *McKee* factors[1] in its determination and therefore reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     Frank and Cynthia Stimley were a married couple with two children, Vincent and Kahrna.  On April 24, 2004, Frank died intestate; that same year, Kahrna was appointed administratrix of his estate.  Frank's only heirs at the time of his death were his wife Cynthia and their children, Vincent and Kahrna.  On September 14, 2015, Cynthia died with a properly executed last will and testament.  The will appointed Vincent executor of her estate, and Vincent hired the Morton Law Firm to represent him as the executor.

¶3.     On October 9, 2015, the Madison County Chancery Court admitted Cynthia's will to probate and appointed Vincent executor of her estate as specified by her will.  Cynthia's will listed Vincent, Kahrna, and her two grandsons as beneficiaries.  Notably, the will contained a clause stating that the executor would

> pay all necessary expenses of administering the estate, including taxes, fees for
> the services of accountants, agents and attorneys, and to reimburse said parties
> for expenses incurred on behalf of the estate.

¶4.     According to Morton Law Firm's brief, Kahrna "misappropriated a significant amount of funds from Frank's Estate and failed to file necessary fiduciary income tax returns for certain years" while she served as administratrix of Frank's estate.  Consequently, litigation began that "significantly involved" Vincent in his role as executor of Cynthia's estate and Kahrna and her actions related to Frank's estate.  "[I]n large part because of these activities, Vincent, as Executor, caused Cynthia's Estate to become indebted to [Morton Law Firm] for

---

[1] *McKee v. McKee*, 418 So. 2d 1278, 1280 (Miss. 1982).

2

attorneys' fees and expenses in the amount of $48,167.75." On January 13, 2023, Kahrna filed an emergency motion to disqualify Morton Law Firm and a lawyer there who was counsel for Cynthia's estate and, additionally, to deny the request for attorney's fees.[2] She reasoned that the firm's representation of Vincent in the litigation was "to further [Vincent]'s singular pecuniary interest to the detriment of the other heirs." Vincent filed a response on February 12, 2023, arguing that Morton Law Firm's representation had benefitted Cynthia's estate and its heirs "other than Kahrna[.]" The court held a hearing on February 13, 2023. The chancery court disqualified Morton Law Firm and the lawyer as counsel for Cynthia's estate "to avoid any existing or potential conflict of interest" and removed Vincent as executor of the estate. The order also stated that the matter of fees to be paid to Morton Law Firm was "held in abeyance" until it was "presented to the [c]ourt for consideration."[3]

¶5.     At some point, Vincent petitioned the trial court to approve those expenses.[4] On April 4, 2023, Kahrna filed a motion to strike the petition from the record. On April 12, 2023, Vincent filed an amended petition for fees including, among other documents, a detailed time sheet and invoice from Morton Law Firm explaining its services, and the amount of requested attorney's fees. On July 26, 2023, a hearing was held on the motions. The

---

[2] Kahrna's motion suggested that Morton Law Firm be removed and substituted with the attorney representing Frank's estate, which Kahrna was administering.

[3] This order was entered on February 17, 2023.

[4] The record is clear that Vincent petitioned the court for attorney's fees at some point, but the original petition does not appear to be a part of the record on appeal. Since Vincent filed an amended petition and response following Kahrna's motion to strike, we refer to those documents when discussing his request.

chancellor found that the requested attorney's fees were of an "astronomical sum" but would consider the request and "issue a written opinion as to . . . what the [c]ourt believes is a reasonable fee in light of . . . services rendered." Following the hearing, the chancellor entered an order denying Kahrna's motion to strike Vincent's petition for fees from the record.

¶6.     On July 28, 2023, the chancellor entered an order granting in part Vincent's amended petition for approval of expenses. The order stated specifically that "[t]he Court awards the Morton Law Firm, PLLC the sum of $5,000.00 in partial payment of [Vincent's] attorney's fees and expenses in representing the fiduciary in this estate." The order contains no further explanation or reasoning as to how this figure was reached. On August 25, 2023, Morton filed a notice of appeal regarding the attorney's fees. The Estate did not file an appellee's brief.[5]

## ANALYSIS

¶7.     On appeal, we are faced only with the issue of attorney's fees. Mississippi law provides that an executor of an estate "shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management or in behalf of the estate,

---

[5] "This Court has adopted two alternative approaches for reviewing a case in which the appellee has neglected to file a brief." *Stratton v. McKey*, 298 So. 3d 999, 1003 (¶11) (Miss. 2020). "[W]hen the record is voluminous or complicated and the appellant's thorough treatment of the issues in the brief makes out an apparent case of error[,]" we "may accept appellant's brief as confessed and reverse." *Id.* (citing *Miller v. Pannell*, 815 So. 2d 1117, 1119 (Miss. 2002); *May v. May*, 297 So. 2d 912, 913 (Miss. 1974)). "The second alternative is to disregard the appellees' error and affirm." *Id.* (citing *Miller*, 815 So. 2d at 1119). "This alternative should be used when the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed." *Id.*

4

if the court be of the opinion that the services were proper and rendered in good faith." Miss. Code Ann. § 91-7-281 (Rev. 2021) (emphasis added).[6] This Court will review "the reasonableness of the [attorney's fees] award only for an abuse of discretion, and we will not reverse unless the award is manifestly erroneous or amounts to a clear or unmistakable abuse of discretion." *Gussio v. Gussio*, 371 So. 3d 734, 753 (¶52) (Miss. Ct. App. 2023) (quoting *Brown v. Hewlett*, 281 So. 3d 189, 199-200 (¶40) (Miss. Ct. App. 2019)); *see also Stokes v. Campbell*, 794 So. 2d 1045, 1048 (¶13) (Miss. Ct. App. 2001) (citing *Bank of Miss. v. S. Mem'l Park Inc.*, 677 So. 2d 186, 191 (Miss. 1996)) (stating "[a] trial court's decision to award attorney's fees is subject to the abuse of discretion standard of review").

¶8.     Morton Law Firm contends that the chancery court's order should be reversed because the chancellor failed to address the *McKee* factors. Indeed, "[b]efore granting or denying attorney's fees, a chancellor **must** apply the *McKee* factors." *Gilmer v. Gilmer*, 297 So. 3d 324, 339 (¶53) (Miss. Ct. App. 2020) (emphasis added) (citing *Black v. Black*, 240 So. 3d 1226, 1235 (¶27) (Miss. Ct. App. 2017)). The *McKee* factors require consideration of the

> (1) relative financial ability of the parties; (2) the skill and standing of the attorney employed, (3) novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) time and labor required, (6) the usual and customary charge in the community, and (7) whether the attorney was precluded from undertaking other employment by accepting the case.

*Id.*; *see McKee v. McKee*, 418 So. 2d 1278, 1280 (Miss. 1982); *see also* Miss. R. Prof. Conduct 1.5.

¶9.     In *Gilmer*, this Court was faced with the issue of attorney's fees following divorce

---

[6] The chancellor never determined whether Morton Law Firm's work on the case was "proper and rendered in good faith."

proceedings of the parties, Bill and Sandy. *Id.* at (¶52). The chancellor ordered that Bill "pay Sandy $10,000 in attorney's fees for the divorce action[.]"[7] *Id.* Bill filed a motion for a new trial or amendment of judgment because the order did not include a *McKee* analysis or discussion. *Id.* The chancellor amended the judgment, merely adding that "[b]ased upon the evidence presented, the [c]ourt determines that the award of attorney's fees under *McKee* [was] appropriate." *Id.* Bill appealed, arguing that the chancellor's award was "void of any *McKee* discussions or analysis" and should be reversed. *Id.* Sandy, on the other hand, argued that "the chancellor's lack of a factor-by-factor analysis should not preclude the award of attorney's fees." *Id.* at (¶54) (citing *Branch v. Branch*, 174 So. 3d 932, 946 (¶¶59, 61) (Miss. Ct. App. 2015)).

¶10. This Court noted that while it was true "that the lack of a factor-by-factor analysis does not immediately warrant a reversal," there must be proof "support[ing] an accurate assessment of fees under the *McKee* criteria." *Id.* at (¶55). Accordingly, the chancellor's order containing no discussion or analysis of the factors was not sufficient and, thus, reversed and remanded. *Id.* at (¶¶55-56). *Gilmer*'s holding is clear: the mere mention of the *McKee* analysis is not enough to support a chancellor's award of attorney's fees. Here, the chancellor did not include any mention or discussion of the *McKee* factors in the order awarding attorney's fees. The chancellor only stated that she thought the requested amount was "astronomical" on the record at the hearing. There is no reasoning given in the order as to why Morton Law Firm would only be awarded $5,000.00 when Vincent had submitted

_____

[7] The chancellor also awarded fees associated with a contempt action, but this is not pertinent to the case at hand.

6

detailed invoices requesting fees in the amount of $48,167.75. This Court finds that the order must be reversed and the issue remanded "for the chancellor to apply the *McKee* factors[.]" *Id.* at (¶56).

¶11. This state's supreme court addressed this issue in *In re Estate of Gillies*, 830 So. 2d 640 (Miss. 2002). The case involved a dispute regarding Alexander Gillies's estate; his mother Marietta was appointed as administratrix of the estate following his death. *Id.* at 642 (¶2). After four years of serving in this role, Marietta discovered that the law firm Alexander had hired after an incident to "prosecute any civil rights or personal injury claims" failed to comply with the applicable statute of limitations. *Id.* at (¶3). Accordingly, Marietta hired her own counsel, Gillis, on a contingency fee basis "to represent the Estate in prosecuting a legal malpractice claim" against the previous law firm. *Id.* Two years later, Alexander's wife at the time of his death filed a complaint to remove Marietta as administratrix "because her appointment had been fraudulently procured through false allegations that she and her husband were the decedent's sole heirs at law." *Id.* at 643 (¶10). After a hearing, "the chancellor set aside and held for naught all of Marietta's actions as administratrix of the estate, including the employment of the attorney to handle the legal malpractice" claim. *Id.* at (¶12). Gillis submitted an itemized bill to the chancery court for $55,550 in attorneys' fees, citing 202 hours of work at $275 per hour. *Id.* at 644 (¶14).

¶12. The chancellor "found the rate excessive" because Gillis's "customary rate" was $140 per hour and adjusted the fee accordingly, awarding Gillis an attorney's fee of $21,200.[8] *Id.*

---

[8] The chancellor also reduced the rate by one-fourth, citing it as "the amount of time that would be attributable to [Gillis's] efforts solely on behalf of Marietta, because Marietta

7

at 644-45 (¶¶14, 18). Gillis appealed, arguing that the chancellor erred by awarding fees "based on an hourly, instead of a contingency basis." *Id.* at 642 (¶6). The supreme court disagreed.[9] The court found that "the chancellor determined a reasonable fee, based on the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Id.* at 646 (¶21). Further, the chancellor had considered the eight factors from Rule 1.5 and "[i]n doing so, he followed the proper procedure that the [c]ourt has established for determining reasonable attorney's fees." *Id.* Therefore, the court found no abuse of discretion because the chancellor "followed the proper procedure." *Id.*

¶13. The factors in Rule 1.5 are identical to the *McKee* factors set out by the supreme court in *McKee*, 418 So. 2d 764, 767 (Miss. 1982). *BellSouth Pers. Commc'ns. LLC v. Board of Sup'rs of Hinds Cnty.,* 912 So. 2d 436, 446 (¶31) (Miss. 2005). In *BellSouth*, the supreme court explicitly stated that "while the trial court has considerable discretion in determining whether to assess fees, and if so, in what amount, this discretion must be predicated on facts . . . [and] the assessment of attorney's fees be reasonable." *Id.* at 445 (¶30). In other words, "a judge's discretion is not unfettered," and a consideration of the Rule 1.5/*McKee* factors is mandatory. *Id.* at 448 (¶39). In the case at bar, there was no indication that the chancellor considered the *McKee* factors in determining the award of fees to be paid to the Morton Law

---

had received one-fourth of the total damages" paid by the previous law firm.

[9] The supreme court noted the chancellor's citation in the order to *Mauck v. Columbus Hotel*, 741 So. 2d 259 (Miss. 1999), a case in which the court affirmed an award of attorney's fees because the chancellor had "appl[ied] the factors enumerated in Mississippi Rules of Professional Conduct 1.5." *Id.* at 645 (¶18) (citing *Mauck*, 741 So. 2d at 271-72).

Firm. The chancellor simply stated, "The [c]ourt awards the Morton Law Firm, PLLC the sum of $5,000.000 in partial payment of [Vincent's] attorney's fees and expenses in representing the fiduciary in this estate." That statement is insufficient under the *McKee* factors and caselaw requiring a consideration of them. In accordance with our supreme court's precedent, we reverse and remand for a consideration of the *McKee* factors and Mississippi Code Annotated section 91-7-281.

## CONCLUSION

¶14. Following a thorough review of the record and noting the absence of the chancellor's consideration of the *McKee* factors when determining the amount of attorney's fees to be awarded, we reverse and remand this case for a proper consideration of the *McKee* factors.

¶15. **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. CARLTON, P.J., NOT PARTICIPATING.**