LEE, C.J.,
for the Court:
¶ 1. Triangle Maintenance Services LLC (Triangle) filed a stop-payment notice requesting KGC Properties Inc. to pay $35,601.93. KGC refused to pay. Triangle sued KGC, and the Lafayette County Chancery Court granted a judgment in favor of Triangle for $20,654.11, which included $5,588.23 in attorney’s fees. KGC now appeals, arguing: (1) it did not owe Oxford Dozer Company (ODC) at the time Triangle filed its stop-payment notice, and therefore, the stop-payment notice did not “attach;” and (2) Triangle was not entitled to attorney’s fees.
FACTS AND PROCEDURAL HISTORY
¶ 2. KGC contracted with ODC to construct a development near Oxford, Mississippi. ODC, in turn, subcontracted with Triangle to perform curb and gutter work for the development. After performing the work, Triangle sent an invoice to ODC for $35,601.93. On October 22, 2008, KGC paid ODC $43,382.70. Claude Neal, owner of ODC, signed an affidavit of release of liens; however, Triangle was never paid for the work it performed.
¶ 3. After the October 22, 2008 payment, ODC abandoned the project. Days later, Total Lawn Care sent a stop-payment notice to KGC. KGC quickly received two additional stop-payment notices — one from Williams Equipment and Supply and the other from CMC Ready Mix. KGC notified ODC of the stop-payment notices. ODC responded, informing KGC it could not complete the job and suggesting that KGC contract with Mark Cox because he was the only contractor Neal had contacted who would “finish the job for the amount of money that is left on the contract.” Instead, KGC paid another contractor $52,190.10 to complete the job.
¶ 4. On January 19, 2009, Triangle sent a demand letter to ODC, but ODC never responded. Later that month KGC received another stop-payment notice from Sparks Auto Parts for $13,385.85. And on February 2, 2009, Triangle filed a stop-payment notice for $35,601.93. KGC paid three of the five stop-payment notices— those from Total Lawn Care, Williams Equipment and Supply, and CMC Ready Mix.
¶ 5. Triangle sued KGC seeking payment as a subcontractor under Mississippi Code Annotated section 85-7-181 (Rev. 2011). Ruling in favor of Triangle, the chancery court stated that KGC should *988 have paid the stop-payment notices in proportion to the amount of claims received, up to the remaining $32,000 left on the contract. Because Triangle’s claims were 41.92% of the claims submitted under stop-payment notices, Triangle was entitled to 41.92% of the $85,939.60 total for stop-notice claims or $15,065.88, as well as $5,588.23 in attorney’s fees. This appeal followed.
STANDARD OF REVIEW
¶ 6. A chancellor’s findings will not be disturbed “when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard[.]” Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002) (citations omitted). Additionally, “it is not the job of [the appellate court] to redetermine questions of fact resolved by the chancellor.” Stockstill v. Gammill, 943 So.2d 35, 40 (¶ 8) (Miss.2006).
¶ 7. A chancellor’s “interpretation and application of the law is reviewed under a de novo standard.” In re Guardianship of Savell, 876 So.2d 308, 312 (¶ 4) (Miss.2004).
ANALYSIS
¶ 8. Under section 85-7-181, a subcontractor can file a stop-payment notice and request the owner to pay the subcontractor directly rather than paying the amount to the contractor. For a subcontractor to reap the benefits of section 85-7-181, he must “giv[e] actual notice prior to the time the owner pays the prime contractor.” Amerihost Dev., Inc. v. Bromanco, Inc., 786 So.2d 362, 365 (¶ 12) (Miss.2001). Therefore, the requirements of section 85-7-181 are two-fold: (1) the subcontractor must give actual notice, and (2) the owner must owe the prime contractor at the time the subcontractor gives the notice. If there are insufficient funds to pay all of the stop-payment notices, the owner should prorate its payments in proportion to the amount of the total claims received. Miss.Code Ann. § 85-7-181.
¶ 9. Neither party raised an issue with the actual notice; therefore, the question before this Court is if KGC owed ODC on February 2, 2009, when Triangle filed its stop-payment notice.
I. REMAINING AMOUNT ON THE CONTRACT
¶ 10. KGC contends that it did not owe ODC at the time Triangle filed its stop-payment notice, and because of that, Triangle’s stop-payment notice could not have “attached.” KGC argues that the chancery court misinterpreted and misapplied the law, which on appeal warrants a de novo review. Tucker v. Prisock, 791 So.2d 190, 192 (¶ 10) (Miss.2001). This contention is incorrect. The chancery court made a finding of fact that KGC still owed ODC under the contract at the time Triangle filed its stop-payment notice, stating specifically that “there is no question in the [c]ourt’s mind that at least $32,000.00 was owed on the contract....” That finding triggered the application of section 85-7-181. Because this issue is based on a finding of fact and not a misapplication of the law, the Court will only reverse the decision if the chancellor was manifestly wrong or clearly erroneous or applied an incorrect legal standard. Miller v. Pannell, 815 So.2d 1117, 1119 (¶ 9) (Miss.2002) (citations omitted).
¶ 11. On November 21, 2008, KGC’s president, Kenny Coleman, sent a letter to Claude Neal, owner of ODC. In the letter Coleman advises Neal that KGC had received three stop-payment notices, one each from Total Lawn Care, Williams *989 Equipment and Supply, and CMC Ready Mix. Coleman also stated that KGC removed $57,000 from the $89,000 remaining as ODC’s final draw, leaving “$32,000 to cover the 3 debts above [the stop-payment notices].” Also, Coleman apprised Neal that KGC would be issuing dual-payee checks in the order the stop-payment notices were received up to the $32,000 maximum.
¶ 12. On March 12, 2009, Coleman sent a letter to all five companies — Total Lawn Care, Williams Equipment and Supply, CMC Ready Mix, Triangle, and Sparks Auto Parts — that had served KGC with stop-payment notices. Coleman wrote that “$32,000 was all that was left to draw at the time Mr. Neal stopped doing his work....” He also informed three of the five companies that KGC would be issuing dual-payee checks in the amounts requested. Coleman notified the creditors that he would not be paying any further stop-payment notices, as he was only paying them “because [he] believefd] ... there would be funds left over when the job was completed.” And on March 12, 2009, KGC issued the dual-payee checks for the first three stop-payment notices.
¶ 13. Clearly from the language in the November 21, 2008 letter and KGC’s payments made with dual-payee checks, KGC owed ODC $32,000 on November 21, 2008. Additionally, Coleman made no payments to ODC or any of the three subcontractors prior to Triangle’s filing of its stop-payment notice. Therefore, KGC still owed on the contract at the time that Triangle filed its stop-payment notice on February 2, 2009.
¶ 14. The chancery court was not manifestly wrong in finding that KGC still owed ODC at least $32,000 when Triangle filed its stop-payment notice. The chancellor properly applied section 85-7-181. Therefore, we find this issue is without merit.
II. ATTORNEY’S FEES
¶ 15. Section 85-7-181 specifically states, “[T]he court ... shall give judgment and award costs, and reasonable attorney’s fees, according to the rights of the several parties in accordance herewith.” KGC argues that since Triangle’s stop-payment notice did not “attach,” it is not entitled to attorney’s fees under section 85-7-181. As stated earlier, KGC owed $32,000 on its contract with ODC when Triangle filed its stop-payment notice. Under the plain language of section 85-7-181, Triangle is entitled to attorney’s fees and costs.
¶ 16. The chancellor did not abuse his discretion when he awarded Triangle $5,588.23 in attorney’s fees and expenses. Therefore, we affirm.
¶ 17. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, J.